## David Beidler et al. v. Emily A. King.

108     23
a209s  302

1. PARTY WALL—*Liability Where it Falls and Injures Property.*—Plaintiff and defendants entered into a contract whereby the plaintiff was given the right to purchase of defendants so much of a party wall as she might need to support her building and whereby she became the owner of only such part of the wall as she should purchase. *Held,* that the defendants owned all that part of the wall not purchased by the plaintiff, and, as owners, are responsible for any neglect in regard to it resulting in injury to others.

2. INSTRUCTIONS—*Assuming Negligence of Plaintiff.*—An instruction to the jury that if they believe from the evidence that the wall in question was in a dangerous and unsafe condition for several days, and that the plaintiff had knowledge of the dangerous and unsafe condition. and that it was apparent from the dangerous and unsafe condition of the wall in question that it would fall and injure the property of plaintiff, then it was the duty of the plaintiff to use ordinary care and diligence to protect her property and to prevent the injury if she could have done so at a moderate expense, and if through her negligence in not doing so her property was damaged, she can not recover, and they should find the issues for the defendant, is properly refused as assuming that plaintiff was guilty of negligence.

3. SAME—*Giving a Correct Interpretation of the Contract in Controversy, Proper.*—The giving of an instruction which is a correct interpretation of the contract between the parties, is within the province of the court for the enlightenment of the jury.

Trespass on the Case, for damage through the falling of a wall. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed May 7, 1903.

Statement.—Appellee sued appellants in case for negligence in not supporting or taking down a party wall between her and appellants' premises, which was damaged by fire and fell on and destroyed appellee's building. There is no controversy in respect to the pleadings. The jury found for appellee and assessed her damages at the sum of $7,776.40, a motion for a new trial was overruled and judgment was rendered on the verdict, from which this appeal is. The appellants are the heirs of Jacob Beidler, deceased. Beidler and appellee executed a party-wall agreement, which is as follows:

" This agreement, made and entered into this twenty-fourth day of August, A. D. 1887, by and between Jacob Beidler, of the City of Chicago, in the County of Cook and State of Illinois, party of the second part, witnesseth :

Whereas, the said Jacob Beidler, party of the first part, is seized and possessed of a certain lot or piece of land in the said city of Chicago, and described as the west half of lot eight in block seventy (70), in the original town, now city of Chicago; and, whereas, the said Emily A. King, the party of the second part, is seized and possessed of a certain piece or lot of land in the said city of Chicago, known and described as the east half of said lot eight (8) in said block seventy (70) in the original town, now city of Chicago, which said last piece or parcel of land lies adjoining and contiguous to said first described piece or parcel on the east side thereof; and whereas, it is the wish of the said party of the first part and of the party of the second part, that a party wall of sufficient thickness for a six-story building shall be built and erected between them; and whereas the said party of the second part is desirous that the center of such party wall shall be located on and along the west line of the east two and one-half ($2\frac{1}{2}$) feet of the west half of said lot eight (8) so owned by the party of the first part, and to effect that purpose has and does hereby agree to and with the said first party to purchase said east two and one-half ($2\frac{1}{2}$) feet of said west half of said lot eight (8), and to pay to the said first party thereof, the sum of one thousand ($1.000) dollars, together with interest thereon on the unpaid balance thereof as hereinafter provided, at the rate of five (5) per cent per annum, until paid, as hereinafter stated.  Now, therefore, this indenture witnesseth, and it is hereby mutually covenanted and agreed by and between the parties hereto. in consideration of the premises, that the said party of the first part may so build and erect a party wall of such thickness, and in accordance with plans already prepared by architect; and in accordance with the ordinances of the city of Chicago, to make and constitute the east wall of such building as he may decide to erect, so that the center line of such party wall shall and may be located on the west line of the east two and one-half ($2\frac{1}{2}$) feet of the west half of said lot eight (8).  And this indenture witnesseth further, and the said party of the first part does hereby covenant and promise and agree that the said party of the second part, her heirs, administrators and assigns, shall and may at all times

Beidler v. King.

hereafter have the full and free right, privilege of joining to and using the said party wall above mentioned, as well below and above the surface of the ground and along the whole length or any part of the length thereof, any building which she or they or any of them may desire or have occasion to erect on the said lot so owned by the said party of the second part, and to sink the joists of such building or buildings into said party wall to the depth not exceeding four (4) inches. Provided, always, nevertheless, and on the express condition, that the said party of the second part, her heirs, administrators, executors or assigns, as aforesaid, before proceeding to join any building to the said party wall or to any part thereof, and before making use thereof or breaking or cutting into the same, shall pay unto the said party of the first part, his heirs or assigns, the full moiety or one-half part of the full value of the whole of said party wall if used, or of such portion thereof as shall be used as a party wall by said party of the second part, which value shall be the cost price at the time when such party wall is to be used by said party of the second part, as fixed, estimated and determined by two competent, disinterested builders of said city of Chicago, one of whom shall be chosen by the party of the first part, or his heirs, executors, administrators and assigns, and one of whom shall be chosen by the said party of the second part or her heirs, executors, administrators or assigns. And if they can not agree upon the value of said party wall, the two thus chosen shall select a third person, and the third person thus selected and chosen shall estimate and fix the cost and value of said party wall, and for that purpose shall have access to said buildings and grounds, and to the plans and specifications made for the purpose of the building of said wall, if said plans and specifications are in existence and can be found, and the price or value of the said party wall fixed, determined by such arbitrators, or any two of them, and certified in writing, shall be final and conclusive upon the parties hereto, their heirs, executors, administrators and assigns. And in case either of the parties hereto, or their executors, administrators, heirs or assigns, shall neglect or refuse to name and appoint an appraiser as above provided, having had thirty days' notice in writing to make such selection or appointment, the other party may name two disinterested builders, and if they can not agree they shall name and select the third, and the appraisers so selected and appointed shall and may appraise such

party wall in the manner and with the force and effect as if chosen mutually as first herein provided. Provided, the said second party may extend either or both the north and south walls of the barn now on said lot and use the said party wall to this extent without paying for such party wall, this privilege to extend only so long as said barn shall remain on said lot as now constructed. And provided, further, if the party of the second part shall build or join to said wall in such a manner as not to actually use the whole of the same, either in the length or height thereof, then and in that case, unless the said party of the second part shall pay for one-half of the value of the whole of such wall, whether used or not, the said party of the first part may and is hereby granted the right and privilege of cutting through such wall in the portion thereof not actually paid for by said second party, for the purpose of putting in windows as a means of lighting his building on his said lot as hereinbefore described. Should the party of the first part leave openings, or cut through said party wall, he shall protect all openings in said wall by iron shutters in the usual manner. And further, should the party of the second part hereafter pay for an additional portion of said party wall, which under this agreement she has a right to do, then all openings in said additional portion so actually paid for by said second party, shall be filled up with brick and mortar by said first party, so that the portion so filled up shall be of the same thickness as the adjoining wall. The party of the second part may at any time connect the chimneys in the building on her lot with the chimneys in said party wall without charge. And it is further covenanted and agreed by and between the parties hereto that if either of the parties hereto shall at any time hereafter desire to extend the said party wall, or to build the same higher, the party so building may build and erect such wall or extension thereof in the same manner as above specified; and the other party shall have the liberty and privilege of joining and using such wall or walls so built and erected as aforesaid on complying with the same conditions as hereinbefore required by said party of the second part as to the manner of joining to the wall and ascertaining the value thereof as above mentioned, and upon paying for the same the one-half part or portion of the value thereof as so ascertained. And whereas, it will become necessary in the course of building and erecting said party wall by the said party of the first part, to extend the

Beidler v. King.

foundations thereof, under the walls of the buildings now on said lot so owned by said second party,

Now, therefore, the said party of the first part hereby agrees during the erection of said party wall, to protect and save from damage the buildings belonging to said second party, and now standing on her said lot; also to protect the lot on which they stand from caving; and the party of the second part hereby agrees to pay said sum of one thousand ($1,000) dollars in the manner following: five hundred ($500) dollars on the signing of this agreement and delivery of warranty deed of the said two and one-half feet of ground, and five hundred ($500) dollars on or before four years from the date hereof, with interest at the rate of five (5) per cent per annum, with the privilege of paying in sums of not less than one hundred ($100) dollars at any time; the interest on the sums so paid to cease from date of such payment, and the said last five hundred ($500) dollars to be secured by trust deed on the two and one-half feet of ground purchased from the party of the first part. And the parties hereto further covenant and agree that if it shall become necessary to repair or rebuild any portion of said party wall or walls, before the said party of the second part shall use or pay for her portion of the same, the expense or cost of such repairing or rebuilding shall be borne by the said first party; and further, if it shall become necessary to so repair or rebuild after the said party of the second part shall have used or paid for her portion of said wall, then and in that event the cost of such repairing or rebuilding shall be borne equally by the parties hereto, to the extent that they are each using said wall.

It is further mutually covenanted and agreed by and between the parties hereto that this agreement shall be perpetual and at all times be construed as a covenant running with the land. In witness whereof the said parties have hereunto set their hands and seals. the day and year first written.

It is further agreed that the cost of protecting the said buildings and lots owned by said second party shall be borne equally by the parties hereto.

JACOB BEIDLER,    [SEAL]
EMILY A. KING.    [SEAL] "

The agreement was recorded August 25, 1897.

Lot 8 is 185½ feet in depth.

Jacob Beidler, after the execution of the party-wall

agreement, erected a six-story brick building on his part of
lot 8. The building fronted on Washington street and
extended south to Meridian street, both of which streets
run east and west. The building was ninety feet in width
and 183 feet in length from north to south, and was situated
on the southeast corner of Washington and Union streets.
The east wall of the building was one-half on Beidler's and
one-half on appellee's land, in accordance with the party-
wall agreement. Subsequently, at various times, com-
mencing with June 6, 1888, and ending August 1, 1895,
appellee purchased from Jacob Beidler and paid for parts
of the party wall. The parts so purchased by her are, in
all, 119 feet in length from Washington street south, and
thirty-eight feet in height. The following diagram shows
the east face of the wall, the entire part thereof purchased
by appellee, and the different purchases.

Appellee erected on her ground a brick stable, extending
from Washington street south 183 feet, substantially to
Meridian street. Extending south 119 feet from Washing-
ton street, appellee's stable was joined to the party wall;
but the south sixty-four feet of the stable was not so joined,
but had an independent west wall, leaving a small space
between said south sixty-four feet of the stable and the
party wall.

On the morning of October 7, 1899, the east half of the

building erected by Jacob Beidler was destroyed by fire, except a portion of the front. There was about fifty-six feet of the second floor left standing on the 17th, but two days later a part of that fell through to the basement, leaving about thirty-five feet standing. The floors above that were somewhat less. The outer walls of the building were standing. The party wall on the morning after the fire was out of plumb, was bulged out, and was cracked from the top to the basement. There were several thousand tons of *debris* that fell through into the basement, among which were several hundred tons of paper in large rolls; this paper and other *debris* was afire and continued to burn for eleven or twelve days after October 17th. On the afternoon of the 20th the city fire-wreckers, under a contract, started to take down the east wall by placing men on the top and had them knock the brick off and onto the *debris* inside. From one and a half to two stories had been torn down, when, about 3 or 3:30 o'clock P. M., on October 28, 1899, the balance of the east wall fell toward the east and down upon Mrs. Emily A. King's building and destroyed the same, except about twenty feet in front, which was considered of no value in rebuilding.

At the date of the fire appellee's building was leased to the National Biscuit Company by written lease from February 1, 1889, till April 30, 1904, at a rental of $103.33 per month.

The fire occurred about 12:40 o'clock in the morning of October 17, 1899. George Beidler, appellant, who represented the Beidler heirs, and had sole control of the Beidler building, testified that he went to the building about 12:55 o'clock in the morning and remained there until eight o'clock, and that, at the latter hour, the entire building, from the roof to the basement, was crushed through, except a space from the front of the forty-two feet back, running down to the second floor. The appellants were doing business as " The heirs of Jacob Beidler," and October 17, 1899, appellee addressed to them a registered letter as follows :

"CHICAGO, October 17, 1899.
HEIRS OF JACOB BEIDLER, 179 West Washington street, City.

GENTLEMEN : I hereby notify you that the walls of the building owned by you, and recently destroyed by fire, on West Washington street adjoining my property, are in a dangerous condition, and ask that you·protect the same at once, as I am informed that if there is a strong wind the east wall of your building is liable to fall on my property at any time. I notify you of this condition, and ask you to protect the wall, so that there may be no damage done. In case you fail to protect this wall and my property is injured by its falling, I shall hold you responsible for any damage done thereby.

Yours truly,
EMILY A. KING."

William H. Barry, who was chief building inspector for the city of Chicago, October 18, 1899, examined the building at that date, and found that most of the interior had been burned out, and that the east wall was out of plumb. In the evening of that day he saw George Beidler, who said he was the agent for the building, and told him that the east wall was in a dangerous condition and must be taken down at once, and asked him whom he, witness, should serve notice on, and George Beidler told him to make it out to him, whereupon witness served said Beidler with the following notice :

"OCTOBER, 18, 1899.
THE ESTATE OF JACOB BEIDLER :

You are hereby notified, as one of the owners of buildings numbers 130 and 132 West Washington street, that the walls of said building are in danger of falling. You are therefore notified to have all dangerous walls of said building taken down at once, or I shall have the work done and the expense charged to the estate, as provided for in section 10 of the building ordinances.

Yours respectfully,
JAMES McANDREWS,
Commissioner of Buildings."

It is not contended that the notices above mentioned were not received.

Nothing was done by appellants toward taking down the

wall until Friday, October 20, 1899, when one Benson, under a contract between him and appellants, commenced, about four o'clock P. M., the work of taking it down. Three men were engaged in the work that afternoon. On the following days from ten to fifteen men were so engaged. The evidence tended to prove that the wall could have been taken down in from four to six days, but up to three to 3:30 o'clock P. M., October 28, 1899, it had not been taken down, and at that hour it fell on appellee's building.

WILLIAM J. LACEY, attorney for appellants.

When a party wall is destroyed by fire, there is no implied or legal obligation to rebuild, and if one rebuild he can not force the other to contribute. Heartt v. Kruger, 121 N. Y. 386; Huck v. Flentye, 80 Ill. 258; Rogers v. Sinsheimer, 50 N. Y. 648; Partridge v. Gilbert, 15 N. Y. 601; Orman v. Day, 5 Florida, 393; List v. Hornbrook, 2 West Va. 342; Sherred v. Cisco, 4 Sandford, 480; Hoffman v. Kuhn, 57 Miss. 746; Crawshaw v. Sumner, 56 Mo. 522; Antomarchi v. Russell, 63 Ala. 358; Taylor v. Millard, 41 Alb. L. J. 233; N. Y. L. I. Co. v. Milnor, 1 Barb. Ch. 362; Babcock v. Utter, 1 Abb. (N. Y.) 59, 60; 3 Washburn on Real Prop. 160; Washburn on Easements and Servitudes, 454–474.

It is well settled that there are no common law rights regarding party walls. Right stands on either contract, statute or prescription. Quinn v. Morse, 130 Mass. 317; List v. Hornbrook, 2 West Virginia, 342; Hoffman v. Kuhn, 57 Miss. 746.

When it is by contract, the contracting terms, as judicially interpreted, determine the rights of the parties. Bishop on Contracts, p. 425; Field v. Leiter, 118 Ill. 17; Gibson v. Holden, 115 Ill. 199; Huck v. Flentye, 80 Ill. 258.

If the plaintiff, by the exercise of ordinary care and prudence, could have avoided the consequences of the defendant's negligence, and fails to do so, he can not recover. Abend v. T. H. & I. R. R. Co., 111 Ill. 202; Ill. Cent. R. R. Co. v. McClelland, 42 Ill. 355; C., B. & Q. R. R. Co. v. Dewey, 26 Ill. 255.

ARTHUR HUMPHREY, attorney for appellee; THOMAS BATES, of counsel.

Under the law, the east wall of the Beidler building was the sole and exclusive property of the appellants, until such time as the appellee exercised her right to pay for and use portions thereof. Mickel v. York, 175 Ill. 62; Tomblin v. Fish, 18 Ill. App. 439; McChesney v. Davis, 86 Ill. App. 380; Gibson v. Holden, 115 Ill. 199; Richardson v. Tobey, 121 Mass. 459; Gorham v. Gross, 125 Mass. 232; Gorham v. Gross, 117 Mass. 442; Maine v. Cumston, 98 Mass. 317.

Where the walls of a building are negligently permitted to stand after the rest of the building has been destroyed by fire, and a part of these walls fall, causing injury to property or persons, the owners of the wall are liable. Church of A. v. Burkhart, 3 Hill, 193; Glover v. Mersman, 4 Mo. App. 90; Lynds v. Clark, 14 Mo. App. 74; Schell v. 2d Nat. Bank, 14 Minn. 43; Schwartz v. Gilmore, 45 Ill. 455; Mickel v. York, 175 Ill. 62.

As to the portion of said wall not purchased and used by appellee, they were charged with the same duties and burdens as though said wall had been entirely upon their own premises. An owner of land has the same duty to keep on his own land a house or wall built thereon, as the filth in his cess-pool, or the water in his reservoir, or the snow upon his roof. His duty is to keep it in such a state that his neighbor may not be injured by its fall. Kappes v. Appel, 14 Ill. App. 170; Martin v. Dufalla, 50 Ill. App. 371; Schwartz v. Gilmore, 45 Ill. 456.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellants' counsel objects that the following instructions, 11, 12, 13, 14 and 18, given at appellee's request, and an instruction given by the court, without request, are erroneous:

11. "The court instructs the jury that under and by the terms of said party wall contract between the said plaintiff, Emily A. King, and the said Jacob Beidler, the said Jacob Beidler and his heirs were the sole owners of

the entire east wall of said burned building, and had the sole and exclusive control thereof until such time as the said plaintiff, Emily A. King, exercised her right to pay for and use some portion of said wall, and that prior to the times the said Emily A. King exercised her right to pay for and use portions of said wall she had no right, title or interest in said wall or any part thereof."

12. "The court instructs the jury that under the terms of the party wall contract introduced in evidence between the plaintiff, Emily A. King, and Jacob Beidler, deceased, the said Jacob Beidler was, during his lifetime, and his heirs were after his death, the sole and exclusive owners of the portion of the east wall of said burned building not paid for by the said plaintiff, Emily A. King, and that as to such portion of said east wall of said burned building as you find from the evidence was not paid for by the said Emily A. King under such party wall contract, the said defendants are charged with the same responsibility for the protection, care and maintenance that they would have been charged with if there had been no party wall contract entered into between said Emily A. King and said Jacob Beidler, deceased."

13. "The court instructs the jury that as a matter of law the plaintiff has no right to go on or touch the portion of said east wall of said building not paid for by her, for the purpose of preventing the same from falling, or for any other purpose."

14. "The court instructs the jury that under the terms of said contracts between said plaintiff and said Jacob Beidler the said plaintiff, Emily A. King, did not have any control over or right to use any portion of said east wall of said burned building until she had paid therefor; and that the fact that she paid for and used portions of said wall gave her no rights in or control over the remainder of said wall, and that at no time did said Emily A. King have the right to go onto or touch the portion of said wall not paid for by her for the purpose of bracing, staying or protecting the same, to keep it from falling."

18. "The court instructs the jury that if you believe from the evidence that the portion of said east wall of said burned building, which was owned by said defendants, was above and to the rear of the portion of said wall which had been paid for and used by said plaintiff, and that the portion of said wall which was owned by said defendants was by them negligently permitted to lean, sag and fall over, and

that said portion of said wall owned by the said defendants in its fall pulled over a part of the portion of said wall which said plaintiff had paid for and was using, and that the portion of said wall which was paid for and used by said plaintiff would not have fallen if the portion of said wall owned by said defendants had not forced it over, then you should find said defendants guilty and assess the said plaintiff's damages at such an amount as you believe from all the evidence and under the instructions of the court, she was damaged by the falling of said wall."

Instruction given without request:

"The court instructs the jury that under the contract in evidence the duty was upon the defendants to exercise reasonable care in respect to all of the wall in question, save and except such part thereof as the plaintiff had paid to Jacob Beidler one-half the value of; therefore any damage caused by any defect in the partition of said wall, which plaintiff had so paid one-half the value of, plaintiff can not recover. As to the remainder of said wall, the court instructs you that it was the duty of the defendants to exercise reasonable care in respect to the same. It is for you to say from the evidence whether, from the time George Beidler, who acted for himself and his co-defendants in the care and management of said building, knew of the fact that said wall had been injured and damaged by fire, he used reasonable care and diligence in respect to the portion of said wall for which plaintiff had not paid one-half of the value, to prevent damages or injury to them for the same, or whether he was guilty of negligence in respect thereto. The question whether he exercised reasonable care and diligence in respect thereto, and is guilty of negligence, is a question of fact to be decided and determined by the jury from all the evidence in the case. If you, from the evidence, find that the plaintiff was without fault, and that defendants were guilty of negligence in respect to said portion of said wall for which plaintiff had not paid one-half the value, and that by reason and in consequence of such negligence said portion of said wall fell and injured the barn of plaintiff, you will find the defendants guilty; and on the other hand if you find the defendants exercised reasonable care in respect to said portion of said wall and are not guilty of negligence in respect to the same, you will find the defendants not guilty."

Instruction 11 is criticised as being an abstract proposi-

Beidler v. King.

tion of law.   The instruction is a correct interpretation of the contract between the parties, and it was within the province of the court to give it for the enlightenment of the jury.   Counsel, in his argument, says, " Instructions 12, 13, 14, and the one given by the court on its own motion tell the jury specifically that appellee had no right to touch that part of the party wall not paid for by her, and that she had no right to brace or protect the party wall from falling, if the same could have been done, and that she had no rights in or to that portion of the wall not paid for by her," and claims that the instructions were erroneous in these respects.   Instructions 11 and 12 informed the jury what the title of Beidler and his heirs was prior to the purchase by appellee of any part of the wall, and their title, after the purchase by appellee of part of the wall, in respect to the part of the wall not purchased by her, and their responsibility as to the part not so purchased.   The 13th and 14th instructions are to the effect that appellee had no legal right to go on or touch any part of the wall not purchased by her.   The instruction given by the court of its own motion instructs the jury as to the responsibility of appellants in respect to the part of the wall not purchased by appellee, and on the question of negligence, etc.   We think the instructions given substantially correct.

Appellants' counsel contends that after appellee elected to use a part of the wall and paid therefor, " the rights relative to repairs of the party wall were changed as to the whole wall," and in support of this view quotes from the party wall agreement the following : .

" And the parties hereto further covenant and agree that if it shall become necessary to repair or rebuild any portion of said party wall or walls, before said party of the second part shall use or pay for her portion of the same, the expense or cost of such repairing or rebuilding shall be borne by the said first party; and further, if it shall become necessary to so repair or rebuild after the said party of the second part shall have used or paid for her portion of said wall, then and in that event the cost of such repairing or rebuilding shall be borne equally by the parties hereto, to the extent that they are each using said wall."

Appellants argue, in substance, that appellee, by the last part of the language quoted, was bound to contribute to the cost of repair or rebuilding to the extent she is using the wall; that she was using about one-fourth of it, and therefore, if the repairing or rebuilding of any part of the wall becomes necessary, even though it be a part not purchased or used by her, she must pay her proportion of the cost. From this conclusion counsel deduces the corollary that appellants and appellee are interested, as it were, *per my et per tout* in every part of the wall, in the proportion of their respective interests, and that the duty to repair being common, neither can be liable to the other.

We can not concur in the premise of counsel that the words, " then and in that event the cost of such repairing or rebuilding shall be borne equally by the parties thereto, to the extent that they are each using said wall," are to be interpreted as meaning that each shall contribute to such cost as to every part of the wall. In interpreting any provision of a contract, the entire contract must be considered. This is elementary. The contract in question in express terms binds appellee to pay for only such part of the wall as she shall purchase, and it would be inconsistent with this to require that she should contribute to the cost of repairing or rebuilding any and every part of the wall which she did not purchase and did not use. By the agreement, the expense of repairing or rebuilding before the use of any part of the wall by appellee, devolves on appellants, but when appellee uses any part of the wall, she is to contribute to such expense as to the part she is using. The language is not that each shall pay in proportion to his interest, but that the cost " shall be borne equally by the parties hereto to the extent that they are each using said wall," meaning clearly, to the extent that they are both using said wall.

Appellant George Beidler, who acted for himself and the other appellants, recognized that the duty of taking down the wall devolved on appellants. When asked by the building inspector who should be served with notice to

take down the wall, he told the inspector to make it out to the agent of the Beidler estate, and the inspector served the notice on him. Also, the contract for taking down the wall was made by appellants. Had appellee interfered with the work, it would probably have been urged against her right to recover.

Mickel v. York, 175 Ill. 62, is a case similar to the present. There was a party wall agreement between the parties, which contained the following:

" And this indenture further witnesseth, that the said party of the first part does hereby covenant, promise, grant and agree that the said party of the second part, their heirs and assigns, shall and may, at all times hereafter, have the full and free liberty and privilege of joining to and using said partition above mentioned, as well below as above the surface of the ground, and along the whole length or any part of the length thereof, any building which he or they, or any of them, may desire or have occasion to erect on the said lot of the party of the second part, and to sink the joist of such building or buildings into the said partition to the depth of . . . . inches, and no further; provided always, nevertheless, and on this express condition, that the said party of the second part, their heirs and assigns as aforesaid, before proceeding to join any building to the said partition wall, and making any use thereof or breaking into the same, shall pay or secure to be paid unto the said party of the first part, his heirs and assigns aforesaid, the full moiety or one-half part of the value of said party wall, or so much thereof as shall be joined to or used as aforesaid, which value shall be the cost price at the time when such wall is to be used by said party of the second part, as fixed, estimated and assessed by three disinterested mason contractors."

The same provisions, in almost the same language, are contained in the agreement in the present case. Mickel had not, at the time of the fire, elected to use any part of the wall. York, nevertheless, contended that the wall, when completed, belonged to both the parties, each owning the half resting on his lot, and an easement in the soil on which the other half rested. The court say:

" Where a party wall of adjoining buildings rests partly upon the soil of each owner, and was constructed as a party

wall, the owners are neither joint owners nor tenants in common of such wall. Each is possessed in severalty of his own soil up to the dividing line, and of that portion of the wall which rests upon it; but the soil of each, with the wall belonging to him, is burdened with an easement or servitude in favor of the other, to the end that it may afford a support to the wall and building of such other. But where a party wall has been constructed on the line between adjacent lots, resting partly on each, by one of the lot owners, under a parol or written agreement, by which agreement the other owner agrees to pay one-half of the value of the wall when he elects to use it, the builder of the wall owns it absolutely, with a permanent right in him and his grantees to have one-half the wall stand on the land of the other while the other retains title, and also after it has passed to an assignee with notice of the rights of the owner of the wall. If, however, by agreement, the owner of the lot who did not build the wall has a right to elect to pay one-half its value and use the same, and he does so, he thereby becomes the owner of not only the one-half standing upon his own land, but has an easement in the other half standing on the lot of the one who built the wall."

Authorities cited by the court fully sustain the opinion.

In the present case Jacob Beidler, deceased, who erected the wall on the dividing line between the lots, was, as the court instructed the jury, the exclusive owner of the wall up to the time when appellee paid for a part of it, in accordance with the agreement between Beidler and her. After appellee purchased and paid for that part of the wall to which her building was partly attached, she was the owner of the part so purchased, which was standing on her own land, and of an easement in the land of Beidler, on which the other half of the part so purchased was resting; and Beidler continued to be the sole owner of all that part of the wall not purchased by appellee, and, consequently, responsible as such owner, and so the court instructed the jury. By the very terms of the agreement, appellee could become the owner of only such part of the wall as she should purchase, in accordance with the agreement. She purchased only thirty-eight feet in height by one hundred and nineteen feet in length. That only she owned. Necessarily, therefore, Beidler, while living,

Beidler v. King.

owned, and his heirs, appellants, now own, all that part of the wall not purchased by appellee, and, as owners, they are clearly responsible for any neglect in regard to it resulting in injury to others. Such neglect is within the legal maxim, *sic utere tuo ut alienum non laedas*, of which appropriate instances are given in Broom's Legal Maxims, 8th Am. Ed., star page 366 *et sequens.*

See also, McChesney v. Davis, 86 Ill. App. 380, and 18 Am. and Eng. Ency., 1st Ed., pp. 3–15, and cases cited in notes. In the cases cited, and in such cases as we have observed, the agreement was to pay half the expense of the party wall when the party not building should elect to use it; but no reason is perceived why the parties may not agree, as they did in the present case, that the party not building may purchase and pay for any part of the wall, and care only for the part purchased and paid for. In this case they carried out the agreement as made. On each purchase of a part by appellee, an estimate was made of the cost price of such part at the date of the purchase, and payment was made as per the estimate.

Counsel for appellants complains of the refusal of the following instructions asked by appellants:

6. "The court instructs the jury that if you believe from the evidence that the wall in question was in a dangerous and unsafe condition for several days and that the plaintiff had knowledge of the dangerous and unsafe condition, and that it was apparent from the dangerous and unsafe condition of the wall in question that it would fall and injure the property of the plaintiff, then it was the duty of the plaintiff to use ordinary care and diligence to protect her property and to prevent the injury if she could have done so at a moderate expense; and if through her negligence in not doing so her property was damaged, she can not recover, and you should find the issues for the defendants."

7. "The court instructs the jury that if you believe from the evidence that the plaintiff had knowledge of the condition of the wall of which she complains, and if at a moderate expense or by the exercise of ordinary care and effort she could have protected her property from the alleged injury, and she failed and neglected to do so, then she can not

recover, and you should find the issues for the defendants."

Instruction 6 apparently assumes that appellee was guilty of negligence, and was, as we think, properly refused. By another instruction given for appellants the jury were instructed that if they believed the plaintiff was guilty of negligence which contributed to the injury, she could not recover, and they should find for the defendants; and by the instruction given by the court of its own motion, above quoted, the court required the jury to find, in order to warrant a verdict for the plaintiff, not only that the defendants were negligent, but "that plaintiff was without fault." We find no reversible error in the refusal of these instructions.

Appellants' counsel, at the close of the plaintiff's case, and also at the close of all the evidence, requested the court to instruct the jury to find the defendants not guilty, and counsel contends that the refusal of each of these instructions was error, for two reasons: namely, that no negligence on the part of the defendants was shown, and that the plaintiff was guilty of contributory negligence. The questions whether the defendants were guilty of negligence which caused the injury, and whether the plaintiff omitted to exercise ordinary care, were submitted to the jury by defendants' fifth instruction quoted in the argument for appellants. The instruction is as follows:

"The court instructs the jury that to entitle the plaintiff to recover the jury must believe from the evidence that the injury complained of was occasioned by the carelessness or negligence of the defendants or their servants in the manner charged in the declaration. And if the jury believe from the evidence that the plaintiff was guilty of negligence contributing to the injury, then the plaintiff can not recover, and the jury should find for the defendants."

If the evidence fairly and reasonably tended to prove the plaintiff's case as stated in the declaration, it would have been error to take the case from the jury. Having carefully considered the evidence and the arguments of counsel, we are of opinion that the evidence not only tended to

prove the plaintiff's case, but that the verdict is sustained by the evidence, and certainly is not manifestly contrary to the weight of the evidence.    It is not contended that the sum awarded as damages is excessive.

The judgment will be affirmed.