# Fitzpatrick *v.* Penfield, Appellant.

*Negligence— Wall standing after fire—Nondelegable duty of owner—Evidence—Burden of proof—Presumption—Degree of proof—Causal connection—Maxims—Res ipsa loquitur—Sic utere tuo.*

1. To recover damages for injuries caused by the falling of a wall, left standing after a fire, the burden of proof to show negligence by defendant is on plaintiff—who, in this case, is the mother of a child that trespassed on the adjoining property of a third person, and was killed by the wall being blown over on it.

2. The mere falling of a wall raises no presumption of negligence. The rule of res ipsa loquitur, or of absolute control, does not apply to such case in the courts of Pennsylvania, although the rule is different in other states.

3. The maxim of res ipsa loquitur applies chiefly to the series of accidents where the rights of the parties injured are closely allied to the rights of the public generally, and the information or means of information as to the occurrence itself is, or was, wholly within the control of the injuring parties.

4. The doctrine of res ipsa loquitur, or of absolute control, as established in this State, is that the evidence of negligence appears when the detailed explanation of the circumstances immediately preceding the accident, the description of the injuring appliance

and the testimony from experience show that the thing which happened would not have happened had the injuring appliance or thing been securely in place or properly cared for. The happening of the accident affords a presumption of want of due care.

5. Under this doctrine, the causal connection is supplied, as is done in many other cases, by affirmative proof that the accident would not have happened had the thing been reasonably cared for, the degree of proof required being slight because of the duty imposed and the care required.

6. The owner of a wall left standing after a fire is charged with the nondelegable duty to use ordinary care to make the property reasonably safe, so that no injury shall befall the adjoining owner, his property, or persons rightfully thereon. The maxim sic utere tuo applies.

*Negligence—Wall standing after fire — Trespassers — Infants— Playgrounds — Attractive appliance — Invitation — Permission — Notice to owner—Warning—Proximate cause—Intervening cause —High winds—Act of God or vis major.*

7. While the owner of real estate owes no duty ordinarily to trespassers and is not liable for injury to them, except for wantonness, the defense of no liability for injury to a trespasser is personal to the owner of the premises trespassed upon; it does not inure to the benefit of strangers to the title, adjoining owners, or other trespassers.

8. When a wall left standing after a fire falls and injures trespassers on the neighbor's lot, the owner of the wall at that moment becomes a trespasser, and the circumstances present a case, technically, of one trespasser injuring another trespasser, and of the relative rights between the two.

9. The mere fact that the trespassers are children will not impose on the owner of real estate any duty to keep his premises safe unless he erects thereon an attractive appliance or permits the land to be used as a playground for such length of time as to presuppose an invitation or permission to occupy the premises in this manner.

10. The amount of use which will bring otherwise private property within the playground rule is such as to cause the place to be generally known in the immediate vicinity as a recreation center.

11. Evidence to the effect that an open lot was frequented by boys every Sunday for four Sundays, and possibly at one or two other times, is not sufficient to justify submission of the question of playground rule to the jury. Such children are clearly trespassers.

12. The owner of real estate cannot escape liability for negligence merely because the person injured is a trespasser, where, before the commission of the negligent act, the presence of the trespasser is known to the owner or ought to have been known, and, by the use of ordinary care the injury might have been prevented.

13. The owner of a wall left standing after a fire is entitled to some notice that the adjoining lot is being used by others than the owners and those lawfully on the premises. The warning should be received a sufficient length of time after the fire, and, assuming the wall was then defective, before the accident to trespassing children, to enable it to be properly secured against such persons.

14. The question as to whether defendant owner had sufficient notice is for the jury, on the following evidence: Beginning with the idea—not sufficient in itself, but which, with other evidence, may go to the jury—that almost every one after a fire naturally looks with great apprehension on standing walls and that curiosity brings many others around destroyed premises, which facts are known to property owners; also that children in this case occasionally played on the adjoining lot, and defendant's own testimony showed that children had been chased therefrom, and that warning signs had been placed on the fence through which the children entered.

15. One who fails in his duty to remedy a defective or dangerous condition is liable for injuries resulting therefrom although the immediate cause of the injury is the wind.

16. If the occurrence of the accident should have been foreseen, the intervening cause will not interrupt the connection between the original cause and the injury.

17. If the wind was not an unusual one, it cannot be called an act of God or vis major, so as to relieve defendant from liability.

Argued January 12, 1920. Appeal, No. 78, Jan. T., 1920, by defendant, from judgment of C. P. No. 4, Phila. Co., March T. 1918, No. 3573, on verdict for plaintiff in case of Delia Fitzpatrick v. Anne W. Penfield. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Trespass for the death of plaintiff's son. Before FIN-LETTER, J.

At the trial it appeared that plaintiff's minor son was killed on March 10, 1918, by the fall of a wall, which it was

alleged defendant had left standing, without proper care, after a fire on February 3, 1917. The boy at the time of the accident was playing with other boys on a lot owned by Howard B. French, which adjoined the lot owned by defendant, on which the wall stood.

Other facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,009. Defendant appealed.

*Errors assigned,* among others, were (2, 3) the affirmance of the 9th point of defendant and the answer thereto, quoted in the opinion of the Supreme Court.

*Hampton L. Carson* and *Jos. Carson,* with them *John Kent Kane,* for appellant.—The children who were killed, while not trespassers on defendant's ground, were trespassers upon the lot of an adjoining owner, and therefore were where they had no right to be, and defendant owed them no duty whatsoever: P. & R. R. R. v. Hummel, 44 Pa. 379; B. & O. R. R. v. Schwindling, 101 Pa. 258; Thompson v. B. & O. R. R., 218 Pa. 444; Gillis v. Penna. R. R., 59 Pa. 129.

There was no evidence of negligence on the part of defendant.

The maxim res ipsa loquitur has no application to this case. There is no legal presumption of negligence to be drawn from the fact that this wall fell: Zahniser v. Penna. Torpedo Co., 190 Pa. 350; Lanning v. Pittsburgh Rys., 229 Pa. 575; Bamford v. P. & B. Traction Co., 194 Pa. 17; Johns v. Penna. R. R., 226 Pa. 319; Dougherty v. Phila. Traction Co., 257 Pa. 118; Joyce v. Black, 226 Pa. 408; Ott v. Boggs, 219 Pa. 614.

*H. James Sautter* and *Palmer Watson,* with them *S. D. Matlack* and *Weill & Oliver,* for appellees.—There

was ample evidence in the case to go to the jury without invoking any presumption of negligence: Dougherty v. Phila. Traction Co., 257 Pa. 118; Geiser v. Pittsburgh Rys., 223 Pa. 170; Janock v. B. & O. R. R., 252 Pa. 199; Sgier v. P. & R. Ry., 260 Pa. 343; Fitzsimmons v. Phila. R. T. Co., 56 Pa. Superior Ct. 365; Sellmer v. Ringling, 62 Pa. Superior Ct. 410; Shafer v. Lacock, 168 Pa. 497; Brown v. Towanda Borough, 24 Pa. Superior Ct. 378; Ahern v. Melvin, 21 Pa. Superior Ct. 462; Booth v. Dorsey, 208 Pa. 276; St. Clair v. Edison Electric Light Co., 38 Pa. Superior Ct. 228; Hauer v. Erie County Electric Co., 51 Pa. Superior Ct. 613; Caffrey v. Phila. Rapid T. Co., 249 Pa. 364.

The question whether plaintiffs' sons were trespassers on the property of the French estate has no bearing in this case: Balser v. Young, 72 Pa. Superior Ct. 502; Mullen v. Wilkes-Barre Gas & Electric Co., 229 Pa. 54; Yeager v. Winton Motor Carriage, 53 Pa. Superior Ct. 202.

OPINION BY MR. JUSTICE KEPHART, March 22, 1920:

Appellee's son, with five other children, was playing along an eastern wall left standing after appellant's buildings on Ludlow and Market streets had been destroyed by fire. The wall, 59 feet long, 26 feet high, 13 inches thick, was connected with another wall at right angles on the south; a pier stood on its western side at the north end. A lot of H. B. French was on the east. A part of this lot, on the side adjoining the standing wall, was an open yard, enclosed at the southern end by a high board fence, with a large closed gate, and a smaller gate cut into the larger one. The small gate was open for some time before the fire and through it ingress and egress might be obtained. It had been nailed shut quite often, but boys just as often broke it open. Trespass notices were posted on the high fence, and iron fences were erected on Ludlow street, blocking traffic along the destroyed buildings. Children occasionally played in the

open yard of the French lot immediately adjoining the standing wall; people sometimes walked across the open space or stopped in it near the wall. Children had been chased from this yard at various times since the fire. Between twelve and one o'clock, Sunday, March 10, 1918, these six little boys went into the yard through the small gate and built a fire beside the wall; there was a high wind prevailing; its peak velocity was 47 miles an hour at one time, and its average, for the hour, 32 miles. At, or near, 12:45 p. m., a part of the wall fell, from the wind pressure, across the open yard of the French lot; it killed three of the boys. Plaintiff charged defendant with negligence in permitting the wall to stand without being strengthened or supported. From a judgment in plaintiff's favor, this appeal followed.

To establish negligence, it must appear that some duty has been unperformed, and without the violation of the duty there can be no negligence. A duty may be imposed either through the relation of the parties or by statute, and, where there is a duty or an obligation, some right exists in another. Speaking generally of the wall left standing after the fire and with regard to an undoubted right in another, it was appellant's duty not to negligently, that is, carelessly, commit or omit any act whereby a person or his property might be injured. The standard by which the performance of this duty may be judged is ordinary care under the circumstances, or the conduct of an ordinarily careful person, in relation to the particular duty under consideration.

Assuming the necessary relation between the parties established, defendant owed a duty to the children; the negligent act complained of as found by the jury was in permitting a wall, 59 feet long, 26 feet high at one end, tapering down to 10 feet at the other, 13 inches thick, to stand unsupported and unguarded, without anticipating the effect of winds from a westerly direction. The part of the wall left standing after the boys were killed bore marks evidencing the close proximity of flames during

the fire. Expansion and contraction of the wall from the fire and water weakened it', and, from this cause, or from improper construction, there was not sufficient adhesion between the bricks. Disintegration of the mortar could be seen in the part of the wall left standing after the accident and, no doubt, the same condition existed before the fall. Large beams that had been supported by the wall before the fire had their supports on the opposite ends destroyed, causing the beams to sag and further reduce the strength of the wall. On the trial experts declared the wall to be defective and unsafe unless properly shored or braced. The jury has so found, and the evidence was sufficient to sustain the finding. Just here it is proper to remark, defendant, in compliance with her obligation of ordinary care, claims she performed such acts which under the law should excuse her from liability? Through her agent, an experienced builder, she employed a competent contractor to tear down or remove such walls or portions thereof as were dangerous. The work was done under the supervision of two capable builders, representing the Bureau of Building Inspection. It was also supervised by defendant's agent who declared the walls left standing safe and sound; they were examined by other builders, not employed by defendant, for the purpose of determining their strength, and these men declared the walls safe and sound and suitable in every way to be incorporated in another building. It is not necessary to do more than read these divergent lines of testimony to be convinced the case was for the jury. Defendant was charged with a nondelegable duty to use ordinary care to make her property reasonably safe; if her witnesses had been given full credit by the jury, a finding that she had satisfied the law's demand would have been sustained; but it was for the jury to decide. The jury found the wall to be defective, and unsafe to remain standing without being properly braced or guarded; in so finding it declared that defendant had not performed

her obligation of ordinary care under the circumstances, —that those employed by her, either through lack of proper inspection, incompetency or misjudgment, failed to ascertain the true condition of the wall, as described by plaintiff's witnesses. This very important dispute in the evidence was submitted under proper instructions from the court.

Having a defective wall standing, unsupported, was the causal connection between the wall with its defective condition and the accident such as should have been anticipated by the plaintiff—or was it vis major? If the occurrence of the accident should have been foreseen, the intervening cause will not interrupt the connection between the original cause and the injury. High winds are not of infrequent occurrence, and this particular wind was termed an ordinary wind occurring three or four times in a year. It was not an unusual one and it was for the jury to find under all the evidence whether it was likely to have occurred and should have been provided against. We cannot say that the intervening cause was vis major. One who fails in his duty to remedy a defective or dangerous condition is liable for injuries resulting therefrom although the immediate cause of the injury is the wind: Schwarz v. Adsit, 91 Ill. App. 576; Moore v. Townsend, 76 Minn. 64; Sutphen v. Hedden & Sons, 67 N. J. L. 324; Meyer v. Haven, 37 N. Y. App. 194; Stehle v. Jaeger, etc., Co., 225 Pa. 348, 352. The causal connection is not broken and the original wrongdoer is liable for the injury sustained.

Returning to the principle of law first noted, did the defendant owe the duty, there discussed, to the children? The case must not be confused with those where the injured person is a trespasser on the injurer's property. There is no liability for injury to such person (except for wantonness) ; the owner owes no duty, either to an adult or a child of tender years, and because of the absence of a relation which imposes a duty there is no right

of action. The underlying principle of the law in such cases is that the injured person was where he had no right to be; the owner was using his property in a lawful manner for a lawful purpose, and, unless wantonness or wilfulness be shown, the owner is not liable. He is not bound to keep his premises in a suitable condition, and, as against trespassers, he need not take any of the ordinary precautions to safeguard places on his property: B. & O. R. R. Co. v. Schwindling, 101 Pa. 258; Thompson v. B. & O. R. R. Co., 218 Pa. 444; Gillis v. P. R. R., 59 Pa. 129, 141; Gramlich v. Wurst, 86 Pa. 74; Rodgers v. Lees, 140 Pa. 475; Selve v. Pilosi, 253 Pa. 571. Ordinarily, the tender age of a child cannot have the effect of raising a duty where none otherwise existed, and the rule throughout the United States is that the mere fact a trespasser is a child will not create or impose on the owner of a property any duty to keep his premises safe; especially is this true in this State, where the owner does not erect on his premises an attractive appliance, or permit the land to be used as a playground for such length of time as to presuppose an invitation or permission to occupy the premises in this manner. When so used, ordinary care must be exercised to keep the premises in safe condition. Of course, this does not mean occasional or intermittent occupancy of another's ground by children as a playground—or almost every foot of open or fenced land, would be under the exception to the general rule, and the general rule would then be the exception. The amount of use that will bring otherwise private ground within the playground rule must depend to a large extent on the circumstances of each case. It may be said that the use contemplated is such as to cause the place to be generally known in the immediate vicinity as a recreation center, and its occupancy should be shown to be of such frequency as to impress it with the obligation of ordinary care on the part of the owner. In the case at bar the open lot was frequented

by boys every Sunday for four Sundays, and possibly
at one or two other times. The court below was clearly
right in holding that this was not often or continued
enough to presuppose an invitation to use the lot as a
special or general recreation place, or to stamp it as a
playground, and the court below was correct in holding
that this child and the other children playing there were
trespassers so far as the owners of the French lot were
concerned. On this subject attention is called to Hagan
v. Delaware River Steel Co., 240 Pa. 222; and, for the
rule with regard to playgrounds: Daltry v. Media E. L.,
H. & P. Co., 208 Pa. 403; Henderson v. Continental Re-
fining Co., 219 Pa. 384; Millum v. Lehigh & Wilkes-
Barre Coal Co., 225 Pa. 214; Counizzarri v. Phila. &
R. Ry. Co., 248 Pa. 474; Selve v. Pilosi, supra; Nichols
v. Telephone Co., 266 Pa. 463; Guilmartin v. Phila.,
201 Pa. 518.

Had the wall been along the street, there is no ques-
tion a definite duty would have been established, but the
rule even as to streets does not make the owner of the
premises an insurer; he is liable only for want of
ordinary care and skill: 1 Thompson on Negligence (2d
ed.), sec. 1056; 20 R. C. L., sec. 68, p. 77; 29 Cyc., pp.
465, 468. The wall did not face the street, it adjoined
private property. So far as an adjoining owner is con-
cerned, it is the duty of the owner upon whose land
something is erected, which has become dangerous be-
cause of a conflagration, to take ordinary precautions so
that no injury shall befall the adjoining owner, his prop-
erty, or persons rightfully thereon. If he neglects
this duty, and injury results, liability follows. The duty
is alike under all circumstances where a right exists in
another to use ordinary care to guard against the falling
of a wall injured by fire: 1 Corpus Juris, sec. 27, p. 1211,
and notes 95 and 96; 1 Thompson on Negligence (2d
ed.), sec. 1060, p. 967. The governing principle in such
cases is more frequently applied to nuisance than to

negligence; it is that one must so use his own property as not to injure that of his neighbor.

Assuming that the children were trespassers, the owners of the French lot would not be liable, short of wantonness or wilfulness, for anything that befell them while on these premises. This defendant would be liable to the French owners for any injury inflicted by neglect to their persons or property, or others rightfully there. So much is certain. Can she answer the parents of these children by saying: "I admit my liability to the owners of the French property for injuries inflicted against their person and property, but my liability to you for your loss on their ground extends no further than their liability to you"? What peculiar attribute of property is lodged in one landowner that he can take unto himself the benefits of a defense peculiarly applicable to the person and property of an adjoining landowner to escape liability for an injury he inflicts on a trespasser on land of the adjoining owner? Under the law he has absolutely no right of property in the adjoining lot, and, as to this lot, he is just as much a stranger to the title and ownership as trespassing children. By reason of being adjoining lot owners, certain mutual duties devolved upon each other, as, for instance, the right of lateral support, and other matters; but these obligations create no property right by which he could participate in the immunity from liability inuring to the owners of the adjoining lot and thus be absolved from liability. The defense of no liability for injury to a trespasser is personal to the owner of the premises trespassed upon; it does not inure to the benefit of strangers to the title, adjoining owners, or other trespassers.

When the wall fell, defendant at that moment became a trespasser. The circumstances present the case, technically, of a trespasser injuring another trespasser, and of the relative rights between the two. Defendant inquires: "How did a duty arise to the trespasser on a neighboring lot; what duty, or right, or power, had she

to guard her neighbor's lot against trespassers without herself becoming one; how could she reasonably be expected to anticipate such an invasion?" It is equally pertinent for plaintiff to inquire: "By what authority do you make such inquiry, you being without a right of property in the French lot? Without such interest, what standing have you to assert a trespass on another's land? As to you the invasion was lawful. You were a trespasser when you entered the French lot; as a trespasser, I had an equal right there with you. I need not anticipate, when I become a trespasser, that you would likewise trespass, and that you would commit your trespass in such negligent manner as to cause me, whom you knew to be there, an injury, or that the consequences of your trespass would be such as to do me injury": Lewis v. Wood, 247 Pa. 545.

But, apart from this, without more than the fact of this standing wall, the adjoining lot and the accident, appellant would not be liable. She is not compelled to anticipate that some stranger would come within reach of her neglect. One engaged in the commission of a negligent act will not be liable for injuries resulting therefrom to another who, so far as he knows, or has reason to expect, is not within range of his negligent act; for illustration, A and B own adjoining farms; A negligently permits a tree to stand with decayed limbs and branches overhanging B's land; X, a casual trespasser on B's land, is injured by a limb blown from the tree; A is without notice of X's presence, under or near the tree, and there is nothing to put him on notice; A is under no duty to anticipate X's presence and would not be liable for the injury. Appellant's duty to the adjoining owners did not extend to strangers or persons whom she had no reason to expect on the premises. She was entitled to some notice; she had the undoubted right to protect herself, and was entitled to be informed in some way that the lot was made use of by others than the owners and those lawfully on the premises. She was entitled

to this warning a sufficient length of time after the fire, and, assuming the wall was then defective, before the accident, to enable her to properly secure it against such persons. It must be remembered these children were of immature minds and would not be liable for contributory negligence.

On the question of notice, we begin with the idea—not sufficient in itself, but which, with other evidence may go to the jury—that naturally after a fire almost every one looks with great apprehension on standing walls, many avoiding them, because they may fall, while curiosity brings many others around the destroyed premises. These facts are known to the owner. We have also the fact that children occasionally played there and that others used the property, and her own testimony shows that children were chased from the premises, and warning signs were placed on the fence. Whether this was sufficient to charge defendant with notice was for the jury, even though it was not shown plaintiff's son was among the persons from whose conduct notice might be implied. The duty of defendant, who knew, or had reason to know, that the premises were being used by others than those having a lawful right thereon, was to exercise ordinary care to guard against the wall falling. She could not carelessly do, or omit to do, any act whereby others known to be within range of the effect of such acts would suffer injury. This in substance is the principle underlying, Brown v. Lynn, 31 Pa. 510; Daltry v. Media Co., supra; Mullen v. Wilkes-Barre Gas & E. Co., 38 Pa. Superior Ct. 3. A person cannot escape liability for negligence merely because the person injured is a trespasser, where, before the commission of the negligent act, the presence of the trespasser was known to him, or ought to have been known, and by the use of ordinary care the defendant might have prevented the injury. One trespass will not justify another: 29 Cyc. 443, and many cases cited.

It is urged that the court applied the doctrine of res ipsa loquitur and that in his instruction to the jury he practically placed defendant in the position of an insurer. It is a well-known principle that negligence is never presumed and generally speaking it must be affirmatively proven, except where there is an absolute duty or an obligation amounting practically to that of an insurer, when the maxim expresses the law and permits an inference of negligence through the law: Johns v. P. R. R., 226 Pa. 320; Zahniser v. Penna. Torpedo Co., 190 Pa. 350.

There is another class of cases coming close to the line of the class just mentioned, but entirely distinct therefrom, where the circumstances are free from dispute and were under the exclusive control of the defendant—cases where the accident is such as, in the ordinary course of things, would not have occurred if due care had been exercised, and in the absence of explanation by defendant the happening of the accident affords an inference that it was from want of due care. The leading case on the subject is Scott v. London & St. Katherine Dock Co., 3 Hurlstone and Coltman, 596. For illustration of the doctrine see St. Clair v. Edison Electric Light Co., 38 Pa. Superior Ct. 228; Lanning v. Pittsburgh Rys. Co., 229 Pa. 575; Hauer v. Erie County Electric Co., 51 Pa. Superior Ct. 613; Johns v. P. R. R., supra; Kahn v. Kittanning Electric Light Co., 238 Pa. 70; Zahniser v. Penna. Torpedo Co., supra. In all such cases it must be made to appear affirmatively that the appliances or circumstances which caused the injury were under the control of the injuring party, and that by the use of ordinary care an accident could not happen. In other words, the failure to provide proper care being the negligent act, when the accident occurs it can only come through one channel, that is, the negligent act. It is in effect the accident proving its own cause. It stands as its own accuser. It applies chiefly to the series of accidents where the rights of the parties in-

jured are closely allied to the rights of the public generally, and the information, or means of information, as to the occurrence itself is, or was, wholly within the control of the injuring parties. But this doctrine of exclusive control has not been established in this State in its entirety; what has been determined here is this, that the evidence of negligence appears when the detailed explanation of the circumstances immediately preceding the accident, the description of the injuring appliance and the testimony from experience, show that the thing which happened would not have happened had the injuring appliance or thing been securely in place or properly cared for. The causal connection is supplied, as is done in many other instances, by affirmative proof that the accident would not have happened had the thing been reasonably cared for, so that in reality it is affirmative proof, the degree of proof required being slight because of the duty imposed and the care required. There was no necessity to apply either of these doctrines in the present case, and under the law and the facts neither should have been applied. Therefore, the court committed reversible error when it charged the jury as it did in the 9th point and answer as follows: "The fact that defendant left this wall of the height and length described to you by the witness, standing unsupported after the fire, and that it afterwards fell, is a prima facie evidence of negligence. [Answer.] That is so, but just take it at its exact weight, that statement, that it is some evidence to be considered with other evidence. It is first blush evidence, and the fact that it fell without any explanation, would raise a presumption that it was carelessly handled or carelessly treated by the defendant. Of course that presumption is only one of the things in the case that must be considered with the others."

In some jurisdictions, when a wall falls, there is a prima facie presumption of negligence, subject to the explanation by defendant of the use of care: City of

Anderson v. East, 117 Ind. 126; Beidler v. King, 108 Ill. App. 23; Hall v. Gage, 116 Ark. 50; Mullen v. St. John, 57 N. Y. 567; Turner v. Haar, 114 Mo. 335; Scharff v. Southern Ill. Construction Co., 115 Mo. App. 157; Patterson v. Jos. Schlitz Brewing Co., 16 S. D. 33; Ryder v. Kinsey, 62 Minn. 85. In this State this doctrine of res ipsa loquitur, or of absolute control, does not apply to a case like the present.

The second and third assignments of error are sustained, the judgment is reversed and a venire facias de novo awarded.