## Bryan v. Barber Asphalt Paving Company.

*Negligence—Burden of proof—Res ipsa loquitur.*

In an action for personal injuries sustained by the plaintiff by catching her foot in a crack in a plank placed by the defendant for pedestrians to cross a street, a part of which had been torn up in the progress of the work in which the defendant was engaged, the maxim *res ipsa loquitur* does not apply and the burden of proof is on the plaintiff to establish the defendant's negligence.

Rule for a new trial and motion for judgment n. o. v. C. P. No. 5, Phila. Co., Dec. T., 1923, No. 8192.

*H. A. Mackey*, for plaintiffs; *R. T. McCracken*, for defendant.

MARTIN, P. J., March 30, 1926.—Suit was instituted by plaintiffs to recover damages for an injury occasioned to the plaintiff, Esther Bryan, by catching her foot in a crack in a plank placed by defendant for pedestrians to cross Fairhill Street, a small part of which had been torn up in the progress of work in which defendant was engaged.

Defendant was changing the grade and laying an asphalt pavement on Olney Avenue, in the City of Philadelphia. At the intersection of Olney Avenue with Fairhill Street, Fairhill Street was torn up and boards were laid by defendant and used by pedestrians to cross Fairhill Street at this point.

Plaintiff testified that on Fairhill Street she saw a plank crossing the street which looked "very dirty, but it looked safe" and did not show any cracks or holes. "I started to walk across, and when I got near the centre, the plank

split and my foot went down between the split in the plank and got caught, and as I tried to pull it out, it twisted in the split boards in the plank."

On cross-examination, referring to the plank, she said: "I don't know whether it looked solid; it was very dirty, and on a glance of looking at a dirty plank, it looked safe from a distant appearance." She was asked: "And you did not see any holes or any split in it," and she answered, "No; not from any distance. Q. And did you see them as you put your foot down on them? A. No, didn't see them, but I felt them. Q. And you suddenly felt your foot give way? A. Not my foot didn't give way; the plank gave way. Q. And your foot suddenly sank into it? A. Yes. Q. As it sank down, did you look down? A. When my foot sank down? Q. Yes? A. When my foot sank down, the plank split; my foot got twisted in the split plank; . . . I didn't know what struck me. Q. And when you did find out what struck you? A. Why, I didn't know."

A witness who lived in the neighborhood and was present at the time of the accident testified that plaintiff said, "I hurt my foot; turned it over a split plank on the west side of Fairhill Street, on the end." She was asked if plaintiff had pointed out the board on which she was hurt, and said she did, and continued: "Q. How far away from that board were you? A. Well, about from the curb to the centre of the street. Q. And when she pointed out that board, did you look? A. I did. Q. What did you see? A. The dirty board—not a very strong one, and it was split. Q. Was it an old or a new split? A. It didn't look new to me; it looked like an old board. Q. An old board—were the edges of the split dirty? A. They were. Q. Did you notice anything about the edges of the split? A. Well, it seemed as if the dirt was wiped off, as if something had struck it. Q. That the dirt had been recently wiped off? A. Yes. Q. That split? A. Yes. Q. What did she say—how was it done? A. She said, 'My foot got twisted; I walked over the board and my foot got twisted in the split.'"

It was claimed by the plaintiffs that the happening of the accident was sufficient to raise a presumption of negligence upon the part of the defendant.

The foreman employed by defendant was called as a witness by plaintiffs and testified that the planks were laid down the night before the accident and that they were "all good planks." "Q. So far as you know, these were all good, strong planks? A. Yes. Q. Who ordered them put down? A. I did."

A police officer who was a witness for plaintiffs testified that he had crossed many times on the boards. He was asked: "Did you make any examination of them?" and replied, "I did one day—yes. I was going up the board on the west side of Fairhill Street and I felt my right foot give. I immediately looked down at that board, and there was a split in there at least two or three feet on the outer edge of the board. I turned around right away and called the attention of one of the workmen to replace that board right away, before some one got hurt. I continued on over Olney Avenue, but the next day when I passed there I had seen that there had been another board put there. . . . Another board was put in there—there was a new board put in there, positively."

It is not claimed that the board that was removed after notice from the police officer was the board that caused the injury to plaintiff.

The case was submitted to the jury. The trial judge charged, inter alia: "Should you find that the defendant did, as a fact, place this plank across that street and hold it out as a means of passageway for pedestrians, before you can find a verdict for the plaintiffs, you must first find that the defend-

ant knew that the plank was, as a fact, defective, or that, from the condition that this plank was in at the time of the accident, the defendant or its agents should have known that the plank had cracked, or would be likely to crack under ordinary usage."

The jury rendered a verdict for plaintiffs. Defendant moved for a new trial and for judgment *n. o. v.*

The evidence, regarded in the most liberal light favorable to the plaintiffs, disclosed that defendant's servants placed a plank or board on the highway for use by pedestrians in crossing Fairhill Street where it was torn up; that, in the opinion of the foreman who put it down, the plank was a good, strong plank; that when the attention of defendant had been called to another plank previously laid, in which a split appeared, it was promptly removed and replaced by a good plank; that, although the plank, immediately after the accident to plaintiff, looked dirty and not very strong, like an old board, and the edges of the split that occurred when plaintiff walked upon it looked as if the dirt was wiped off, "as if something had struck it," there was no evidence that the board was not in good condition when laid down, or of the cause for the split when plaintiff walked upon it.

Counsel for plaintiffs claims that the doctrine of *res ipsa loquitur* is applicable; but defendant was not an insurer, was under no contractual relation with plaintiffs and was not in complete control of the board after it was laid upon the public street, where the public had the right to use it as part of the highway. There was no evidence to show what caused the crack. Many persons passed over the plank; a steam roller was operated in the vicinity, and the bumping of automobiles at this place in Fairhill Street had furnished entertainment to some of the residents on the street. There was no evidence of a defect in the board before the accident or that an inspection would have disclosed a defect.

In Fitzpatrick v. Penfield, 267 Pa. 564-577, Mr. Justice Kephart said: "It is a well known principle that negligence is never presumed and generally speaking it must be affirmatively proven, except where there is an absolute duty or an obligation amounting practically to that of an insurer, when the maxim expresses the law and permits an inference of negligence through the law."

In Zahniser v. Torpedo Co., 190 Pa. 350-353, it was said by Mr. Justice Mitchell: "In cases where the duty is not absolute, like that of a common carrier to exercise the highest care and skill in regard to the safety of a passenger who has committed himself to its charge, but arises in the ordinary course of business, it is essential that it shall appear that the transaction in which the accident occurred was in the exclusive management of the defendant, and all the elements of the occurrence within his control, and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there is any other cause apparent to which the injury may with equal fairness be attributed, the inference of negligence cannot be drawn. . . . There was no evidence that the result complained of was so uncommon as to be of itself evidence of negligence. . . . It was not a case where the circumstances made the happening of the accident itself sufficient evidence of negligence." And in Stearns v. Spinning Co., 184 Pa. 519-523, it was said: "The doctrine of *res ipsa loquitur* applies where under the circumstances shown the accident presumably would not have happened if due care had been exercised. Excepting where contractual relations exist between the parties, as in the case of carriers of passengers and some others, negligence will not be presumed from

the mere happening of the accident and a consequent injury, but the plaintiff must show either actual negligence or conditions which are so obviously dangerous as to admit of no inference other than that of negligence. The burden which is thus thrown upon the defendant is not that of satisfactorily accounting for the accident, but merely that of showing that he used due care."

The plank in question passed out of the exclusive control of defendant when it was laid upon the street. That it was a good plank when laid is proved by the uncontradicted testimony of the foreman who laid it, called as a witness for plaintiffs. His testimony proved that defendant used due care and rebutted any presumption of negligence raised by the happening of the accident.

It was further said in Stearns v. Spinning Co., 184 Pa. 519-523: "What, then, was there to submit to the jury? The defendant, as we have said, was not bound to account for the happening of the accident. It had been relieved by the plaintiff of the burden, if any there was, of showing the exercise of due care. The plaintiff's whole testimony not only failed to show negligence on the part of the defendant, but rebutted any presumption of negligence which may have arisen, and affirmatively proved its absence."

In Kahn v. Kittanning E. L. Co., 238 Pa. 70-75, a boy was killed by coming in contact with a broken live electric-light wire. In that case the defendant erected the wire. There was no evidence to show why it broke. It was said by Mr. Justice Potter: "It was not enough to prove the mere fact of the breaking of a wire, which caused the injury. The question for the jury was, 'Did the negligence of the defendant company cause it to break? If this did not appear, there was no liability upon the defendant.' . . . As the evidence did not show the cause of the break in the wire, or that the company failed to remedy the trouble with due and reasonable alacrity, the trial judge was justified in withdrawing the case from the jury."

In the instant case the circumstances did not afford evidence from which negligence could be inferred that relieved the plaintiffs of the burden of proof: Johns v. Pennsylvania R. R. Co., 226 Pa. 319-321.

And now, to wit, March 30, 1926, the rule for a new trial is discharged and motion for judgment n. o. v. is granted, and judgment is entered in favor of defendant against the plaintiffs n. o. v.

An exception to the action of the court is noted for plaintiffs.