**OHIO CASUALTY INSURANCE COMPANY (VENANGO FEDERAL SAVINGS AND LOAN)**

v.

**BANK BUILDING AND EQUIPMENT CORPORATION OF AMERICA.**

The **OHIO CASUALTY INSURANCE COMPANY (GRANNIS)**

v.

**BANK BUILDING AND EQUIPMENT CORPORATION OF AMERICA.**

Civ. A. Nos. 99–68, 7–69 Erie.

United States District Court
W. D. Pennsylvania.
June 17, 1968.

Civ. A. No. 99–68 Erie.

Richard H. Scobell, Erie, Pa., for plaintiff.

Civ. A. No. 7–69 Erie.

Will J. Schaaf, Erie, Pa., for plaintiff.

John F. Potter, Erie, Pa., for defendant.

## OPINION

WEBER, District Judge.

These two consolidated actions seek indemnity on behalf of the insurance carrier of two parties who were found jointly liable for damages for the death of Charles Grove, an employee of the present defendant, in Civil Action No. 86–65 Erie in this Court. The present defendant was not made a party to that action. The circumstances of the liability imposed in that case are set forth in

the opinion in the action of Wagner, Admrx. of Grove v. Grannis, Venango Federal Savings and Loan et al., reported in 287 F.Supp. 18.

The present claims of indemnity are based both on an express contract of indemnity between the defendant and Venango, under which Grannis claims as a third-party beneficiary, and on the basis of a common law right of indemnity asserted by both parties on the grounds of restitution because of payment of an obligation for which the present defendant is alleged to be primarily liable.

All parties have moved for summary judgment. It has been stipulated that the record of the action at Civil Action No. 86–65 Erie shall constitute part of the record of this action for the purpose of these motions.

There can be no doubt from the record of the former action that the proximate cause of the accident which caused the death of Grove was the active negligence of the present defendant. It was the contractor which was working at the site constructing a new building for Venango. It was excavating for footers for the new building at the base of the foundation of the old building, and undercutting the old building walls and failing to observe many building practices which were called for under the circumstances. The deceased was the employee of the defendant who was directly engaged in this work.

Although these two actions are being maintained by insurance carriers on behalf of the defendants in the former action, it is by coincidence that the same carrier represented both parties. For convenience we will continue to designate each plaintiff by the name of the insured in each action, Venango and Grannis.

Venango desired to build a new bank building. It engaged defendant, a specialist in planning, design and construction of bank building and related facilities, to render planning services. It was decided that the new building should be built on part of the site of an old hotel building. Grannis, a lawyer, and Venango, agreed to buy the old hotel building, and with the advice of defendant, to divide the building at the location of an interior wall, with Grannis retaining title to the part which was to remain standing, and Venango taking title to the portion which was demolished to prepare for the site of the new building. Venango entered into a construction contract with defendant for construction of its new building, one wall of which would follow the property line dividing the Grannis and Venango tracts and be adjacent to the newly created exterior wall of the old building retained by Grannis. While excavating for foundations for the wall of the new building defendant undercut the supporting earth of the wall of the old building and also cut into the wall of the old building for the purpose of placing underpinning and support. In the course of these operations the old wall collapsed, killing Grove, defendant's workman.

The building contract between defendant and Venango contained the following express provision:

"1B. UNDERPINNING

General Requirements.

(a) The Contractor under this section of the specifications shall take precautions to guard against movement or settlement of adjacent building, provide and place bracing or shoring necessary or proper in connection herewith, be responsible for the safety and support of such building, be liable for any movement or settlement and any damage or injury caused thereby or resulting therefrom. If at any time the safety of the adjacent building appears to be in danger, cease operation, notify the Architect, take precautions to support the building and do not resume operation until permission has been granted."

There is no doubt from the evidence in the prior action that the direct cause of the wall collapse was the failure to follow these requirements. There is also

no doubt that these requirements were specifically incorporated into the building contract to cover the Grannis building. The present defendant participated in the decision to cut the old building at the point selected, the Grannis building was the only adjacent building, the other three sides of the new building were bounded by streets or alleys, and the construction plans contained provisions for the support and underpinning of the adjacent building wall.

While not denying the express provisions of the indemnity clause, defendant argues that they cannot be construed as indemnifying Venango against its own negligence, and that the record of the prior action supported a finding of liability against Venango for independent acts of negligence committed by it. Defendant cites Pittsburgh Steel Co. v. Patterson-Emerson-Comstock Co., 404 Pa. 53, 171 A.2d 185 [1961], as holding:

> "However, the law is well settled that the intention to include within the scope of an indemnity contract, a loss due to the indemnitee's own negligence, must be expressed in clear and unequivocal language." (p. 57, 171 A.2d p. 187).

However, the clear, precise and detailed language of the indemnity clause in the present contract admits of no equivocation; the builder expressly agreed to take all precautions against the movement or settlement of the adjacent building; but it collapsed. The builder expressly agreed to provide and place bracing or shoring necessary; none was provided. The builder expressly agreed to be responsible for the safety and support of such building, be liable for any movement or settlement and any damage or injury caused thereby or resulting therefrom. That is what is demanded here.

In the *Pittsburgh Steel Co.* case cited by defendant it was held that the "broad" general indemnity clause present in that case did not indemnify Pittsburgh Steel Company against its own negligence where it was the negligent operation of a crane by the alleged indemnitee's own employee that caused the injury. However, the case did recognize that where there was clear and unequivocal intention to cover the situation, such indemnity clauses were valid and enforceable. We have no doubt as to the intent and purpose of the indemnity clause in the present contract; it points to a particular recognized peril in the work to be undertaken, it assigns responsibility for the precautions to be taken, and it assumes liability for the results.

In addition to the contractual liability asserted by Venango, Venango claims an implied obligation to indemnify under the principles of restitution.

 The liability imposed upon Venango in the prior case, under the evidence and the charge of the court, was based upon its actions in participation in the decision to cut the old building at the point selected, its imputed knowledge of a defective or dangerous condition of the remaining wall, failure to take precautions where there was a peculiar risk of physical harm, failure to have expert supervision at the site, and possibly of retention of control over the manner of performance by the retention of the right to appoint a resident inspector. The duties which were imposed upon Venango as the owner of the land are duties imposed by §§ 414, 416 and 427 of the Restatement of Torts 2d. These provisions impose liability on the owner of land, despite the employment of an independent contractor, where there is a negligent failure to exercise reasonable control, or where there are peculiar dangers connected with the work which the owner knows or has reason to know to be inherent in or normal to the work. See Philadelphia Electric Company v. James Julian, Inc., 425 Pa. 217, 228 A.2d 669 [1967]. These are termed "non-delegable duties", inasmuch as the owner cannot delegate his responsibility by the employment of an independent contractor. In other words, liability is imposed upon the owner, not because of his own actions, but by operation of law. As such, the liability of the

owner of the land is secondary to that of the primary tort-feasor.

"But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily liable." Builders Supply Co. v. McCabe, 366 Pa. 322, 327, 328, 77 A. 2d 368, 371, 24 A.L.R.2d 319.

In such a case we believe that the liability of the landowner is secondary:

"The liability of the owner of real property for injury to a passerby for negligence in covering or in failing to cover or guard such a hole in a sidewalk does not relieve the active or actual wrongdoers from the consequences of their acts. The liability to the passerby is joint. As between themselves the active wrongdoer stands in the relation of an indemnitor to the person who has been held legally liable therefor." Goerges v. Reading Company, 162 Pa.Super. 475, 58 A.2d 191 [1948].

See also: Tromza v. Tecumseh Products Co., 378 F.2d 601 [3rd Cir., 1967]; Quinones v. Township of Upper Moreland, 293 F.2d 237 [3rd Cir., 1961]; and City of Pittsburgh v. United States, 236 F. Supp. 809 [W.D.Pa., 1965] for other applications of this principal.

 Under both contractual liability and common law liability we have no doubt that the basis of Venango's obligation to the deceased workman was purely secondary. Venango was a bank, neither it nor anyone in its employ handled a shovel or a pick, dug any trench, removed the supporting earth from under the adjacent wall, or cut the holes in the foundation wall which was the immediate cause of the collapse. Under such circumstances it is entitled to indemnity for the damages it was required to pay.

With respect to the other claim, that of the insurance carrier for Grannis, most of the same observations are pertinent. As to common law liability, Grannis' obligation is even more remote than that of Venango. Grannis was the owner of the adjoining building. He participated in the agreement to cut the building at the point indicated. He maintained the building on the adjacent premises with the wall adjoining the construction site although that wall may have been defective or unsafe. There is no evidence of personal knowledge of a dangerous condition by Grannis, although he may be charged with constructive knowledge of a danger which might have been discovered by proper and reasonable inspection. But even such an inspection and an assurance by the person inspecting that there was no danger would not necessarily relieve Grannis.

 § 364 of the Restatement of Torts, 2d, imposes liability on possessors of land to persons outside the land for harm caused by a structure which the possessor realizes or should realize will involve an unreasonable risk of harm if the possessor has created the condition or if it is created with his consent, or even without his consent where reasonable care is not taken to make the condition safe after the possessor knows or should know of it. This is the law of Pennsylvania, McCarthy v. Ference, 358 Pa. 485, 58 A.2d 49 [1948]; and the jury in the former case was instructed that it applied. Under Pennsylvania law he had an obligation to make an inspection and was chargeable with knowledge of its condition. Pope v. Reading Co., 304 Pa. 326, 156 A. 106 [1931]. This has been declared a non-delegable duty. Fitzpatrick v. Penfield, 267 Pa. 564, 109 A. 653 [1920]. Therefore, as to the deceased workman, Grannis was held liable, but as between Grannis and the present defendant, Grannis' actions were all secondary. The mere failure to dis-

cover the defect does not avoid his right to indemnity from the active tortfeasor.

"The right to indemnity enures to a person who, without active fault on his own part, has been compelled by reason of some legal obligation to pay damages occasioned by the negligence of another." Burbage v. Boiler Engineering & Supply Co., 433 Pa. 319, 249 A.2d 563 [1969].

The liability of Grannis to the deceased workman was based upon failure to make reasonable inspection and the consequences of such failure. While this is non-delegable, it is still not active negligence. In Tromza v. Tecumseh Products Co., cit. supra, the Court of Appeals noted:

"* * * the only negligence alleged against defendant Marquette was failure to make a proper test or inspection at the time of assembly; whereas defendant Tecumseh was charged with a two-pronged negligence, both in the welding process and in failure to find the defect by proper inspection." (378 F.2d p. 604).

It held that Marquette under these conditions was entitled to indemnity from Tecumseh.

Grannis was a passive participant in this situation. He accepted the advice of defendant as to the proper location to cut the wall. He occupied the building and the rooms enclosed by the wall without actual knowledge of its condition. When he learned of the situation being created by defendant's undercutting operations he was alarmed, but was assured by defendant's superintendent that this was a proper procedure. But it was defendant's pick and shovel that caused the wall to collapse. He was liable under the doctrine of strict liability applied to a landowner even with the assurance given him by defendant's superintendent, as was the defendant in Fitzpatrick v. Penfield, supra, but his participation was passive at all stages.

Grannis also claims as a third-party beneficiary to the express indemnity contract between defendant and Venango. A reading of that provision indicates a clear intention to benefit Grannis. His building is the only adjacent building that could possibly benefit and the contract specifically refers to the obligations of defendant to guard against movement or settlement of the adjacent building, to provide bracing or shoring for it, to be responsible for its safety and support, and to be liable for any movement or settlement and any damage or injury caused thereby or resulting therefrom. Where the parties to an obligation indicate their intention to create an obligation in favor of a third party in their agreement, that third party has status to recover on the contract. Burke v. North Huntingdon Twp. Municipal Authority, 390 Pa. 588, 136 A.2d 310 [1957]. Such rights of third parties, who are not privy to the contract, to recover are recognized by the Restatement of Contracts, §§ 133, 135, 139 and 345. They have been adopted by the courts of Pennsylvania. Pennsylvania Supply Co. v. National Casualty Co., 152 Pa.Super. 217, 31 A.2d 453 [1943]; Commonwealth v. Great American Indemnity Co., 312 Pa. 183, 167 A. 793 [1933]; Concrete Products Co. v. United States Fidelity & Guaranty Co., 310 Pa. 158, 165 A. 492 [1933]. This principle is even extended to a third party not specifically in contemplation of the parties, where a contract creates a duty to inspect. Evans v. Otis Elevator Co., 403 Pa. 13, 168 A.2d 573 [1961].

We, therefore, conclude that Grannis' insurance carrier is entitled to indemnity from defendant, both under an implied right of indemnity based on restitution and as a third party beneficiary to the indemnity agreement between defendant and Venango.

A separate ground of defense against Grannis has been raised by defendant. When the Grannis building collapsed, Grannis brought suit by a separate action for damages to this building against the present defendant, docketed

in this Court at Civil Action No. 86–65 Erie. This suit was discontinued upon settlement, and Grannis delivered a release to defendant. A reading of the release indicates that it clearly covers the damages to the Grannis building which were sought in the action at Civil Action No. 86–66 Erie. The consideration of the release is the dismissal with prejudice of the action of Grannis against defendant for damages to the building. The claims of the deceased workman, Grove, were not involved in that action, although it arose out of the same wall collapse. Nor was Grannis' liability to Grove determined at the time the release was given. Under Restifo v. McDonald, 426 Pa. 5, 230 A.2d 199 [1967], it has been clearly established in Pennsylvania that a general release is not effective as to claims not within the contemplation of the parties. Here we do not have a general release, as that term is commonly understood, covering a general settlement of accounts, but a release specifically reciting the damages sustained by Grannis when his building collapsed. This release is no bar to Grannis' present claim for indemnity for monies paid to satisfy the obligation to the deceased workman.

### ORDER

And now this 17th day of June, 1969, all parties having moved for summary judgment and the court having considered the record and arguments of the parties, the Court finds that there is no genuine issue as to any material fact and that judgment should be entered as a matter of law, it is ordered that the motion of plaintiff Ohio Casualty Insurance Company in Civil Action No. 7–69 Erie be granted, and it is ordered that the motion of plaintiff Ohio Casualty Insurance Company in Civil Action No. 99–68 be granted, and that the motions for summary judgment filed by defendant in each of the above cases be denied.

Counsel for the parties will prepare and submit an order liquidating damages for entry of judgment in accordance with the above order.