Saul Schoenenberger & Alice Schoenenberger, his wife *v.* Keith L. Hayman, Jr. et al. Appeal of Mifflin Township.

Saul Schoenenberger & Alice Schoenenberger, his wife, Appellants *v.* Keith L. Hayman, Jr. et al., Appellees.

Saul Schoenenberger and Alice Schoenenberger, his wife, Appellants *v.* Keith L. Hayman, Jr. et al., Appellees.

Argued May 9, 1983, before Judges CRAIG, MAC-PHAIL and BARBIERI, sitting as a panel of three.

*Franklin E. Kepner, Jr., Kepner and Kepner,* with him *David C. Dickson, Jr., Beckley, Dickson and Hill,* for appellant/appellee, Keith L. Hayman, Jr., Mifflin Township and Nathan Reigle.

*Jack C. Younkin,* for appellees/appellants, Saul Schoenenberger and Alice Schoenenberger, his wife.

OPINION BY JUDGE BARBIERI, October 7, 1983:

The present action involves the appeal of the additional defendant, Mifflin Township, and the cross-appeal of the plaintiffs, Saul and Alice Schoenenberger from a decision of the Court of Common Pleas of Columbia County which dismissed the exceptions filed by the parties to that court's finding of a verdict in favor of the plaintiffs on their action for the breach of an implied warranty of habitability and fitness in the construction of their home. The defendants, Hayman Brothers. Custom Builders, are not participating in the present appeal.

The factual background of this case is concisely and fairly stated in the opinion of the court of common pleas as follows:

On June 22, 1976 Saul Schoenenberger and Alice Schoenenberger, his wife, (hereinafter referred to as "Plaintiffs"), purchased from Keith L. Hayman, Jr. and Kenneth Hayman, Co-Partners T/A Hayman Brothers Custom Builders, (hereinafter referred to as "Defendants"), a new residential dwelling located in Mifflin Township, Columbia County, Pennsylvania. An on-lot sewage system had been installed on the property by the Defendants, pursuant to a sewerage permit issued by the Mifflin Township Sewage Enforcement Office, Nathan Reigle, (hereinafter referred to as "Additional Defendants").

Shortly after Plaintiffs took residence in the premises, they noted that sewage was percolating to the top of the ground in the area where the sewage system had been installed. Plaintiffs informed Defendants of the problem, and

414

the Defendants attempted, without success, to remedy the situation by placing more fill on the drainage field.

Plaintiffs then contacted the Pennsylvania Department of Environmental Resources, (hereinafter referred to as "DER"), whose agents performed soil tests on the premises. These tests revealed that a conventional on-lot system—of the type installed by Defendants— would not function properly due to the soil conditions of the premises. Further, according to DER, no system of any type could be permitted on the premises under the usual regulations. However, because of the extreme hardship involved in this instance, DER indicated that it would consent to an individual residential sewage system with a stream discharge. The cost of such a system is approximately $4200.00.

Plaintiffs then instituted the present action against the Defendants. Plaintiffs rely primarily upon implied warranties of habitability and fitness, which are applicable to the sale of a new residence.

Defendants in turn joined the sewage enforcement officer and his employer, Mifflin Township, as Additional Defendants. Defendants claim that the enforcement officer's percolation tests were conducted in a negligent manner, and that the permit for a conventional system should not have been issued.

A non-jury trial was held, and on October 27, 1980, the court entered a verdict in favor of the plaintiffs and against the defendants for $4,263.60, based upon the defendants' breach of the implied warranty of habitability and fitness which extends to the purchase of a new home.[1] Additionally, the court entered a ver-

---

[1] See *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972).

dict in the same amount in favor of the defendants against the additional defendants upon a finding that the additional defendants' negligence in performing their tests, upon which the permit for the on-lot system was issued, was a substantial factor in producing the harm suffered by the defendants. All parties filed exceptions to the court's decision and the present appeals followed.[2]

The Township initially contends that the defendants were guilty of extraordinary negligence which relieves the Township of any liability for the harm suffered by the plaintiffs. For this contention, the Township points to the testimony of their expert witness, Robert Sorg, who testified at trial that he had a conversation with Keith Hayman, one of the defendants, who told Sorg that he had to use a pump to rid water in the bottom of the absorption pit before the septic system was put in place, and further that Hayman knew that the location of the pit was not suitable for the system. While it is true that the extraordinary negligence of a second actor will be a superseding cause and insulate an antecedent tortfeasor from liability, *Miller v. Checker Yellow Cab Company of Bethlehem, Inc.*, 465 Pa. 82, 348 A.2d 128 (1975), *see also* Restatement (Second) of Torts §447 (1965), the question of whether extraordinary negligence is present in a disputed case, is a matter which must be resolved by the trier of fact. *Miller.* While we have no doubt that had the defendants installed the septic system under the conditions as described by the Township's expert witness, the defendants' actions would constitute extraordinary negligence, the question as to whether or

[2] The Township's appeal, No. 55 T.D. 1981, and the plaintiffs' cross-appeal, No. 23 T.D. 1982, were filed with the Superior Court and subsequently transferred to this Court. The plaintiffs also filed a cross-appeal at No. 2375 C.D. 1982, which is the same appeal as No. 23 T.D. 1982.

not the events in this case occurred as told by Sorg, were not uncontradicted as the Township contends. Rather, Kenneth Hayman and Ned Runge (an employee of the defendants) both testified that no water ever existed in the pit and that no pump was ever used. Since it is within the province of the trial court to judge the credibility of witnesses and to weigh testimony, *Lawner v. Engelbach,* 433 Pa. 311, 249 A.2d 295 (1969), and since it appears obvious from the trial court's opinion that it felt the combined testimony of Kenneth Hayman and Ned Runge to be more credibile than Sorg's, the Township's argument that the defendants were extraordinarily negligent must fail, since the evidence upon which they rely was discredited by the court below.

The Township also contends that the court below erred by relying upon the Restatement (Second) of Torts §328(d), entitled Res Ipsa Loquitur, to infer negligence on their part since the court did not sufficiently eliminate other possible causes of the plaintiffs' harm. In Pennsylvania, the doctrine of res ipsa loquitur is neither a substantive rule of law nor a procedural one. *Lanza v. Loretti,* 537 F. Supp. 777 (E.D. Pa. 1982); *Pennsylvania Liquor Control Board v. City of Philadelphia,* 17 Pa. Commonwealth Ct. 627, 333 A.2d 497 (1975). The doctrine rather, is simply a shorthand expression for circumstantial proof of negligence which enables a plaintiff to get his case to the jury when direct evidence of negligence is unavailable. *Lanza; see also Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d 94 (1974). In order to make use of the doctrine to infer negligence on the part of a defendant, a plaintiff must show that the event causing the plaintiff's harm is of a kind which ordinarily does not occur in the absence of negligence, other possible causes (including the conduct of the plaintiff and third persons)

are sufficiently eliminated, and the indicated negligence is within the scope of the defendant's duty to the plaintiff. *Gilbert;* Restatement (Second) of Torts §328(d) (1965). On the criteria relating to other reasonable causes, a plaintiff is not required to exclude all other possible causes beyond a reasonable doubt, but it is enough if he makes out a case from which a jury may reasonably conclude that negligence was, more probably than not, that of the defendant. *Id.* at Comments e, f. *Lanzia.* The Township alleges that the use of heavy equipment over the site of the septic system and/or the addition of chemicals by the plaintiffs to the system could have been other possible causes of their harm so as to disallow the trial court from relying upon res ipsa loquitur to infer negligence on their part. Our review of the record reveals that these other possible causes relied upon by the Township were sufficiently eliminated so that the trial court could correctly conclude that the negligence involved was more probably than not that of the additional defendants. The plaintiffs' problem existed well in advance of any equipment which was operated over the site of the system. Further, the equipment used was part of an effort (albeit unsuccessful) to remedy the sewage problem by grading and placing fill over the problem area. Similarly, no evidence was adduced at trial which indicated that any harmful chemicals were ever added to the system by the plaintiffs. Rather, the Township only introduced by way of testimony that certain chemicals *could* cause harm to the system, but in fact never established whether any chemicals had ever been added. We further note that, had the court not relied upon res ipsa loquitur, there was direct evidence introduced at trial upon which negligence could be found on the part of the Township. In particular, it was established that the Township's enforcement officer had failed to perform a required DER satu-

ration test before a permit could be issued for an on-lot system.

Lastly, the Township contends that it was error for the court to hold the Township and their sewage enforcement officer, Reigle, jointly and severally liable. The Township asserts that since there was no evidence presented to show that they were in any way negligent in their selection of Reigle, or that they knew Reigle was performing his tests in a negligent manner, their liability should be secondary to that of his. The Township, therefore, contends that the defendants should be required to proceed against Reigle first, and if they are unable to recover damages from him, then the Township would assume liability. We clearly must reject this contention by the Township as it is well established that an employer is liable for the torts of his employees committed in the course of their employment. *See Shuman Estate v. Weber,* 276 Pa. Superior Ct. 209, 419 A.2d 169 (1980); and Restatement (Second) of Agency §219 (1958).[3]

The plaintiff's sole contention is that the trial court erred in refusing to award consequential damages for the loss of use of their rear yard due to the sewage problem they experienced. The court below denied the plaintiffs' claim for $2,000.00 in consequential damages concluding that the plaintiffs failed to present sufficient proof to sustain their item of dam-

---

[3] The Township has cited the case of *Ragan v. Steen,* 229 Pa. Superior Ct. 515, 331 A.2d 724 (1974), to support their proposition that the defendants should proceed against Reigle first, and then against the Township if the defendants cannot recover their damages from Reigle. *Ragan,* however, does not support this position. *Ragan* involved an employer's right to indemnification from an employee once the employer was held vicariously liable for the employee's negligent acts. This situation, of course, has no bearing upon an employer's liability to the injured party, which is the issue in the present case. The Township cannot interject principles relating to indemnification to alter their liability to the defendants.

ages. We agree. While compensation for breach of a contract cannot be justly refused because proof of the exact amount is not possible, the law still requires that evidence be produced which shall, with a fair degree of probability, establish a basis for assessing damages. *Exton Drive-In, Inc. v. Home Indemnity Company,* 436 Pa. 480, 261 A.2d 319 (1969); *William B. Tanner Co., Inc. v. WIOO, Inc.,* 528 F.2d 262 (3rd Circ. 1975); *Draft Systems, Inc. v. Riman Mfg., Inc.,* 524 F. Supp. 1049 (E.D. Pa. 1981). In the present case, while plaintiffs presented evidence to show they had been deprived of the use of their rear yard, they presented no evidence whatsoever upon which a basis could be established to assess this item of damage. Accordingly, an award of consequential damages for this item was properly refused.

For the foregoing reasons, the decision of the court of common pleas dismissing the exceptions filed by the parties is hereby affirmed.[4]

### ORDER

AND Now, this 7th day of October, 1983, the decision of the Court of Common Pleas of Columbia County, dated March 9, 1981, dismissing the exceptions of the plaintiffs, Saul and Alice Schoenenberger, and the additional defendant, Mifflin Township, is hereby affirmed.

---

[4] Governmental immunity is inapplicable to the present case since the plaintiffs' cause of action accrued in 1977, after our Supreme Court's decision in *Ayala v. Philadelphia Board of Education,* 453 Pa. 584, 305 A.2d 877 (1973) which abolished governmental immunity and before the effective date of the Political Subdivision Tort Claims Act, Act of November 26, 1978, P.L. 1399, *as amended,* formerly 53 P.S. §§5311.101-5311.803, repealed by Section 333 of the Act of October 5, 1980, P.L. 693. Similar provisions are now found in Sections 8541 through 8564 of the Judicial Code, 42 Pa. C. S. §§8541-8564.