614 A.2d 261

**Dulcina C. SMITH, Appellant,**

**v.**

**KING'S GRANT CONDOMINIUM, a Condominium,**

**v.**

**Mary Scott LLOYD, Edward Carey and Alice Carey, James F. Malloy and Lawrence W. Spencer.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1991.

Filed Sept. 2, 1992.

262

Henry E. Rea, Jr., Pittsburgh, for appellant.

Jay D. Glasser, Pittsburgh, for King's Grant, appellee.

Before CIRILLO, FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge:

This is an appeal from a judgment pursuant to an Order denying appellant's Motion for Post–Trial Relief. Appellant had, *inter alia*, challenged the entry of compulsory non-suit against her. Appellant argues before this court that the court below erred in granting appellees' motion for compulsory non-

suit. Appellant believes sufficient evidence establishing her cause of action was presented at trial to merit presentation of the case to the jury. For the reasons which follow, we find that compulsory non-suit was properly entered and will, therefore, affirm the judgment of the trial court.

■ The following facts were adduced at trial.[1] Appellant was the owner of a unit condominium in the condominium plan of the appellee, King's Grant Condominium. The other named appellees were other unit owners whose units were located in appellant's particular building of the King's Grant Condominium Plan. These other appellees were joined as additional defendants below upon the motion of King's Grant Condominium. The plan contained approximately eleven buildings, some of which were comprised of ten units, some twenty units, and some thirty units. Appellant's unit was located on the lowest level of her building (unit K). The units of the plan were each serviced by two separate sewer lines; one line ran from kitchen fixtures and one line ran from the bathroom fixtures. Lines from the individual units joined common vertical lines in the building, one vertical line for the kitchens and one vertical line for the bathrooms. These separate vertical lines joined a common main line located under the building and the main line carried waste out into the main public sewer.

On December 24, 1987, appellant left her unit to spend approximately four days out of town for the Christmas holiday. Upon her return, appellant discovered that sewage had backed up through the outlets (floor drain, bathtub, toilet, bathroom sink) of the bathroom sewage line. Appellant's unit was flooded with raw sewage, causing extensive damage both to the unit and to appellant's personal property, and necessitating appellant's removal from the unit for an extended time.

1. Like the trial court, we will consider the propriety of the entry of compulsory non-suit based upon all of the evidence presented at trial, including items later stricken from the record (see Opinion at 263). Although significant portions of appellant's evidence were later stricken, at the time compulsory non-suit was entered, those articles of evidence were still in the record and were considered by the court below in its decision to grant compulsory non-suit. Therefore, we must properly consider them as well.

Prior to December 24, 1987, in the years from 1976 to 1987, appellant had experienced over twenty sewage back-ups in her kitchen sewage line and had complained on various occasions to the condominium association. Although appellant's bathroom sewage line had never backed up before the December 1987 incident, the bathroom lines in the lowest level units of other buildings had apparently experienced bathroom line back-ups on other occasions. While the severity of the bathroom back-ups is not of record, the problem was sufficiently chronic that the condominium association printed the following warning in its monthly newsletter for a period of at least a year:

### SEWER BACK-UPS

No sanitary napkins, tampons or disposable diapers are to be disposed of in the toilets. This causes restrictions in the main drain lines which then back sewer water up into the lower apartment units. Please dispose of these items properly. How would you like to get up in the morning or come home at night to this kind of mess? The people on the lower floors have experienced this and your cooperation is requested.

King's Grant Condominium Newsletter—January 1, 1986 at 5. There was testimony that the buildings of the condominium were constructed in a "cookie cutter" fashion, although the same individual also testified that the sewer lines of the different buildings were not identical. No expert testimony was introduced that the sewer lines of different buildings were substantially similar. Regular maintenance procedures followed by the condominium association included snaking the main drains of all buildings monthly. This maintenance improved flow through the lines but did not prevent clogging. At trial, appellant introduced no evidence that the sewer line back-ups could have been alleviated by any steps or measures undertaken by appellee.

We begin our analysis by reiterating our standard of review in cases of compulsory non-suit:

It has been long settled that a compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established. The plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence. Any conflict in the evidence must be resolved in favor of the plaintiff.

*Coatesville Contractors v. Borough of Ridley,* 509 Pa. 553, 559, 506 A.2d 862, 865 (1986).

An examination of the instant facts viewed in the light of that standard, leads us to the conclusion that the appellant, in the presentation of her case below, failed to produce sufficient evidence on her chosen theories of recovery to avoid non-suit and to allow the jury to decide the issues. The major stumbling block for the trial court and the parties below seems to have been the articulation of precisely which theory of tort or negligence was being presented. Knowing the theory is vital, because this will determine what is required to establish a *prima facie* case. To avoid non-suit the appellant must establish her cause of action, i.e., she must present evidence of each element of a *prima facie* case. The court and the parties below searched the Restatement (Second) of Torts in vain for the appropriate theory of tort to apply to the facts of this case. Their assay of tort law was quixotic because the theory of tort they were seeking exists more or less in an inchoate form.

The law of condominium is a relatively new area and is expanding rapidly. Unfortunately, the law of tort has yet to catch up with developments in this area. In his authoritative text on condominium law, one commentator opined as to the state of flux in the law of the tort liability of condominium associations:

This final category of substantive law relates not so much to association operation, but rather to the association's relationship to others, both its members and third parties. This is, moreover, one of the areas of greatest activity in the past five years and appears destined for more years of development and uncertainty.

Hyatt, Wayne S., *Condominium and Homeowner Association Practice: Community and Association Practice*, 1988, American Law Institute, p. 343.

■ The problem instantly is that the nature of a condominium has not been contemplated precisely by the Restatement (Second) of Torts. At its heart, our problem arises from the innate duality of a condominium's nature; in some ways the condominium relationship is akin to that of adjacent owners, in others, it is like that of lessor and lessee. Indeed, one of the positions advocated by appellant and ultimately rejected by the court below was the applicability of § 364(c) of the Restatement (Second) of Torts.

§ 364. Creation or Maintenance of Dangerous Artificial Conditions

A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if

(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it.

§ 364(c) Restatement (Second) of Torts. Our Commonwealth has recognized liability under this theory for some time. *See Boyle v. Pennsylvania R. Co.*, 346 Pa. 602, 31 A.2d 89 (1943), for example. Although the fit of this section to the facts *sub judice* is imperfect,[2] the trial court seemed to find it wholly

---

2. This Court would also note the close, albeit imperfect, fit of § 361 of the Restatement (Second) of Torts to the facts at hand:

§ 361. Parts of Land Retained in Lessor's Control but Necessary to Safe Use of Part Leased

A possessor of land who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care

(a) could have discovered the condition and the risk involved, and

(b) could have made the condition safe.

inappropriate stating that appellant is not in the position of an adjacent owner of land, because she also jointly owns the land where the complained of dangerous or artificial condition arose. The trial court requested case citations involving condominiums and the application of § 364(c), but appellant could find none. This comes as no surprise when one considers the recent development of condominium law. However, we believe that if we conform § 364(c) of the Restatement to the peculiar nature of the condominium relationship, we find a theory of tort available to appellant under which recovery could have been had.

Initially, while ownership may be a factor under § 364(c), liability is premised on possession and control—not ownership. To conform § 364(c) of the Restatement (Second) of Torts to the reality of the condominium relationship, it is necessary to view the condominium association, and its *possession* of the common elements of the condominium, as an entity separate and apart from the appellant and her *possession* of the individual unit, with each possessing definable, adjacent land interests. In fact, the statutory scheme in Pennsylvania directs that the individual unit owner be treated as a separate entity in tort:

§ 3311. Tort and contract liability

(a) General rule.— ...

While we are not dealing with a landlord-tenant relationship here, we believe that appellant would have been in a better position analogizing to this section. Indeed, other courts have recognized this analogy: In our view, the condominium owners association—residential condominium owner relationship is analogous to that of the landlord—tenant relationship.... When a condominium owners association 'performs all the customary business functions which in the traditional landlord—tenant relationship rest on the landlord's shoulders[,]' such as managing the project, maintaining and repairing the common areas, providing security, and obtaining insurance, ... the courts impose on the association the same duty of care as a landlord.... The underlying reasoning for the imposition of the duty of the association is that it is the only one in a position to maintain and secure the common areas which are under its exclusive control. *Moody v. Cawdrey & Associates*, 6 Haw.App. 355, 721 P.2d 708, 713 (1986), reversed on other grounds, 68 Haw. 527, 721 P.2d 707 (1986) (citations omitted). Nevertheless, because appellant did not propound this theory below, and because the court below did not consider it, we will not do so now on appeal.

(2) Except as otherwise provided by paragraph (1):

(i) An action in tort alleging a wrong done by the association or by an agent or employee of the association, or an action arising from a contract made by or on behalf of the association, shall be brought against the association.

(ii) A unit owner shall not be subject to suit or, except as otherwise provided by subsection (b), be otherwise directly or indirectly held accountable for the acts of the association or its agents or employees on behalf of the association. . . .

(4) A unit owner is not precluded from bringing an action contemplated by this subsection because he is a unit owner or a member or officer of the association.

68 Pa.C.S.A. § 3311(a)(2) and (a)(4).[3] The fact that appellant has a minor and purely "technical" interest in the land of the condominium association as well as an interest in the offending common elements should not preclude the potential liability of the condominium association. Possession and actual control of the dangerous artificial condition coupled with the failure to take reasonable steps to protect others from that danger will impose liability under § 364(c). Commentators have confirmed our logic:

Largely for historical reasons, the rights and liabilities arising out of the condition of land, and activities conducted upon it, have been concerned chiefly with the possession of land, and this has continued into the present day. *This development has occurred for the obvious reason that the person in possession of property ordinarily is in the best*

---

**3.** We note in passing that the trial court was correct in finding that the King's Grant Condominium was declared prior to 1980 and was, therefore, subject to the provisions of the Unit Property Act, 68 P.S. § 700.101 *et seq.* However, 68 Pa.C.S.A. § 3102(a) specifically mandates the application of § 3311 of Title 68 to those condominiums created before the effective date of that act.

We would also note that 68 Pa.C.S.A. § 3311(a)(4) obviates any need to discuss *De Villars v. Hessler*, 363 Pa. 498, 70 A.2d 333 (1950), and its progeny, which hold that a member of an unincorporated association may not recover in tort from that association.

*position to discover and control its dangers, and often is responsible for creating them in the first place.*

Keeton, W. Page, *Prosser and Keeton on the Law of Torts,* 1984 West Publishing Co., page 386 (emphasis added).

Obviously appellant does exercise some remote, extenuated control over the general affairs of the condominium association when she elects members to its governing board. Equally obvious, however, is appellant's total inability to influence the association to change its stance with regard to the sewer back-up problem. It is also clear that appellant could in no way have repaired or maintained personally any defective common elements. It was, instead, the condominium association which had exclusive possession and control over the common elements. Nevertheless, we are unable to grant appellant the relief requested, because appellant adduced insufficient evidence of tortious conduct under § 364(c) to merit presentation of the case to the jury.

Viewing the evidence presented below in the light most favorable to appellant, she has established that the sewer lines are in the possession or control of the condominium association. Evidence was presented from which it could be inferred that third parties created a risk of harm without the possessor's consent. With the newsletter warning, she has presented evidence that the possessor was aware of problems in the sewer lines. Although no independent expert testified that the sewer lines in the various buildings were similar enough to put the association on notice as to a back-up problem in each individual building, we believe that a reasonable inference from the association's blanket newsletter warning is that the sewer lines were sufficiently similar and that, therefore, the association was on notice as to each individual building. Evidence was presented of the actual occurrence of the the foreseeable harm. However, what is fatal to appellant's case was the failure to demonstrate at trial that appellee association failed to exercise reasonable care to correct the condition once they had notice of its existence.

There was no evidence presented at trial as to what appellee association could or should have done to prevent the

injury which harmed appellant. Appellant did not show that her injury was caused by a defectively designed or maintained plumbing system coupled with appellee condominium association's failure to take *available* remedial action. For instance, appellant alleged in her complaint that appellee could have installed a back-flow valve to prevent sewage from entering appellant's condominium.[4] If only appellant had put in evidence to this effect at trial from which the efficacy of this solution could be shown, we might today be finding in her favor. The production of such evidence is critical to appellant's case because, under § 364(c), while a *failure* to remedy yields an actionable cause, an *inability* to remedy does not. Appellant failed to show that there was anything appellee condominium association could have done to deflect the harm which was thrust upon her.

We note that on occasion, the availability of remedial or corrective action to establish reasonable care may be obvious. Such has been the case where an accumulation of snow and ice falls from a roof and damages an automobile on adjoining property, *Menzel v. Lamproplos*, 168 Pa.Super. 329, 77 A.2d 645 (1951), or where strip mining activity causes such instability that earthslides occur and damage a lower adjoining landowner, *McArthur v. Balas*, 402 Pa. 116, 166 A.2d 640 (1961). However, such is not the case where one is dealing with the plumbing system of a large condominium complex. Thus, while appellant has evinced the duty owed to her by appellee, she has neglected to establish how that duty was breached. Therefore, her case cannot proceed to the jury.

■ At one point in her argument below,[5] appellant seemed to be arguing that appellee's duty to her was absolute and that

4. Complaint, page 2.

5. MR. REA (appellant's trial counsel): Our theory of the case is they owe us an absolute duty not to put sewage on our property, the same as any neighbor owes that duty to an adjacent neighbor, not to put sewage, smoke, unusual whatever it is, onto somebody else's property.
Notes of testimony dated 6/1/90—6/4/90, p. 36. Also:

she need only to have shown appellee's maintenance of an artificial condition and that her harm resulted from it.[6] This is an argument that appellee is liable without fault and it is an incorrect view of the law of this Commonwealth. Appellant has cited various cases, but none of them hold that under similar circumstances, a plaintiff was relieved from a showing of fault, be it intentional act or negligence, in order to establish liability. It is vital to any action brought under § 364(c), that a defendant be shown to have breached a duty of reasonable care. *See McArthur v. Balas, supra, McCarthy v. Ference,* 358 Pa. 485, 58 A.2d 49 (1948), and *Fitzpatrick v. Penfield,* 267 Pa. 564, 109 A. 653 (1920). *See Wagner v. Grannis,* 287 F.Supp. 18 (W.D.Pa.1968) and *Ohio Casualty Insurance Company v. Bank Building & Equipment Corporation,* 300 F.Supp. 632 (1968), applying Pennsylvania law. *See also Doerr v. Rand's,* 340 Pa. 183, 16 A.2d 377 (1940).

This is not to say that strict liability may never apply under circumstances similar to these. Indeed, where the artificial condition giving rise to the resulting harm is of an ultra-hazardous nature, liability will be found regardless of negligence on the part of the person who possesses the land where the ultra-hazardous artificial condition exists. *See* Restatement, Second, Torts §§ 519 and 520. The rule in *Rylands v. Fletcher,* L.R. 3 H.L. 330 (1868), has been adopted in Pennsylvania via the adoption of these sections of the Restatement. *See Albig v. Municipal Authority of Westmoreland County,*

MR. REA: ... If their pipe overflows into our unit, we have a right to recover for that, and I don't have to show what they could have done to prevent it.
Notes of testimony dated 6/1/90—6/4/90, p. 39. And:
MR. REA: ... I'm saying under the terms of the Restatement and every case I have found in Pennsylvania, that when someone invades your property, unless they have a right to do it, they have to respond to me in damages for that invasion. It's the same as if you have two neighbors and if you have your sewer pipe leading out to your street, your sanitary sewer pipe leading out to your street and that breaks and you flood the next door neighbor, you're responsible for that. I don't have to go into your pipe to find out why it broke. You owe me the duty not to put sewage onto my property.
Notes of testimony dated 6/1/90—6/4/90, p. 40.

**6.** This hints at the absolute nuisance theory discussed *infra.*

348 Pa.Super. 505, 502 A.2d 658 (1985). However, we cannot say that the maintenance of sanitary sewage lines constitutes an ultrahazardous activity. Therefore, appellant is not excused from a showing of negligence [7] in order to impose liability upon appellee.

As appellant failed to present a *prima facie* case of negligence under § 364(c) of the Restatement, Second, Torts, the trial court properly prevented the case from proceeding to the jury and granted the motion for the compulsory non-suit. While we believe that the interests of justice require us to conform appellant's negligence action to the condominium milieu, those same interests demand that appellant not be forgiven a showing of the required elements of an action in negligence. Instantly, appellant has failed to demonstrate the breach of duty required for liability under § 364(c).

■ Additionally, we affirm the trial court's resolution of appellant's claim that the negligence in this case is subject to the doctrine of *res ipsa loquitur.* Essentially, the trial court noted that in order to maintain a negligence action under the theory of *res ipsa loquitur,* a plaintiff must eliminate other potential causes of the harm suffered.[8] The trial court went on to point out that appellant failed to eliminate herself as a possible cause of the blockage and sewer back-up, nor did she eliminate other unit owners in her building as possible causes. We reject appellant's *res ipsa loquitur* argument on the basis of the trial court's opinion.

7.  We have noted that a showing of intent on the part of appellee would also constitute sufficient fault to impose liability, although that theory of recovery is expounded at § 158 of the Restatement, Second, Torts. Of course, the evidence does not suggest that appellee intentionally caused the sewage to flow into appellant's condominium unit, nor was this argued at trial or alleged in appellant's complaint. Although appellant states this argument in her brief, we will not consider it, for the first time, on appeal.

8.  § 328 D.  Res Ipsa Loquitur
    (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when ...
       (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
    ...
    Restatement, Second, Torts § 328 D.

■ Lastly, we must consider the doctrine of absolute nuisance which has been propounded by the dissent as providing a valid cause of action for appellant that was sufficiently proven at trial so as to avoid compulsory non-suit. Under such doctrine a plaintiff need only show that sewage from defendant's land has travelled onto plaintiff's land and that plaintiff has been injured thereby. Negligence need not be shown, liability being absolute. While we agree with the dissent that this doctrine would appear to provide appellant with a valid cause of action, we cannot ground a reversal of the trial court upon a cause of action which was not pleaded below.[9] While we feel that it is proper for us to alter slightly appellant's § 364(c) negligence argument so that it comports to the law of condominium, we feel that it is not proper for us to permit appellant relief on appeal based upon a wholly different cause of action.

■ Furthermore, for us to adopt an absolute nuisance theory in order to grant appellant relief, seems to us tantamount to raising the issue *sua sponte*. For us to consider an issue *sua sponte* is to exceed the scope of our appellate review. We have been specifically admonished by our supreme court to not partake in such endeavors. *See Estep v. Estep*, 508 Pa. 623, 500 A.2d 418 (1985), and *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975).

Accordingly, we affirm the judgment of the trial court. Jurisdiction relinquished.

BROSKY, J., files a concurring statement.

CIRILLO, J., files a dissenting opinion.

9. Appellant did allude to this theory when she claimed that she was owed an absolute duty by appellee condominium association not to put sewage on her property. See footnote 5 and Notes of testimony dated 6/1/90—6/4/90, pp. 36–40. However, as the trial court indicated, this theory was not pleaded in appellant's Complaint. The trial court rightly did not consider an argument raised by plaintiff to which defendants had not received notice by complaint or other pleading.

BROSKY, Judge, concurring.

I am in agreement with the majority's finding that appellant failed to present a *prima facie* case of negligence under § 364 of the Restatement, Second, of Torts, and, failed to meet her burden of proof required regarding the doctrine of *res ipsa loquitur*. Hence, I am constrained to agree that the trial court properly prevented the case from proceeding to the jury and granted appellees' motion for a compulsory nonsuit.

I wish to note that I empathize with the plight of appellant, who clearly suffered inconvenience and damage as a result of the backing-up of the sewer system into her bathroom. It is truly unfortunate that in the instant case she will not be compensated for all of her damages. Yet, as the majority has so clearly set forth, appellant and similarly situated condominium unit owners possess remedies for instances when damages are occasioned upon them by the intentional or negligent acts of the condominium association or the agents or employees of the association. § 364 Restatement (Second) of Torts; 68 Pa.C.S. § 3311(a)(2), (4).[1]

It is interesting to note that in *Arnold v. New City Condominiums Corp.*, 78 A.D.2d 882, 433 N.Y.S.2d 196 (1980), New York permitted a condominium unit owner to institute a negligence action against the developer of the condominium building (alleged defects in the drainage system resulted in the flooding of the basements of individual condominium units; the defect was in the common elements of the condominium). In *Arnold* the developer filed a motion for summary judgment against the unit owner and the trial court denied the motion. The Appellate Division of the Supreme Court of New York then affirmed the trial court's order and the case proceeded to trial.[2]

1. *See* majority memorandum, at pages 264, 265.

2. Additionally, the condominium association may have standing to represent the individual condominium unit owners in a lawsuit, against the condominium developers, alleging defects in the construction of the condominium. *1000 Grandview Association v. Mt. Washington Association*, 290 Pa.Super. 365, 434 A.2d 796 (1981). In *1000 Grandview Association* the condominium association brought an action alleging

In *Schoninger v. Yardarm Beach Homeowners' Association, Inc.*, 134 A.D.2d 1, 523 N.Y.S.2d 523 (1987), a condominium unit owner initiated an action against the condominium board of managers and the condominium association, seeking injunctive relief compelling the defendants to, *inter alia*, make such repairs as were necessary to the common elements of the condominium buildings. The plaintiff alleged that various common elements of the properties had been improperly designed and constructed and were being improperly maintained. Although the Appellate Division of the Supreme Court of New York found that the trial court erred in failing to grant the defendants' motion for summary judgment, the condominium unit owner submitted the affidavit of an architect retained by her as an expert and the expert expounded upon specific defects in the common elements of the properties. This type of evidence is clearly more beneficial to a plaintiff's case than general allegations unsupported by expert evidence.

The majority notes that appellant would have been in a better position if she had analogized her relationship to the condominium association as that of landlord-tenant relationship. In *McGowan v. Devonshire Hall Apartments*, 278 Pa.Super. 229, 420 A.2d 514 (1980), a tenant sued her landlord, upon the theory of *res ipsa loquitur*, for injuries sustained as a result of a malfunction in the operation of an elevator located on one of the common elements of the apartment building. The landlord joined the elevator service company. The verdict was against the landlord and our Court affirmed. In *McGowan* the plaintiff testified as to the details of the accident. There was also detailed testimony from inspectors from the service company, who provided information regarding the operation of and repairs to the elevator. There was also testimony from an elevator inspector who was an employee of a subsidiary of the liability carrier of the landlord. He testified regarding the impossibility of the occurrence of the accident as described by the plaintiff. All of the aforemen-

specific and implied breaches of warranty for defects and omissions in the construction of the condominium.

tioned testimony was certainly relevant in proving or disproving a plaintiff's allegations in a landlord-tenant case, or by analogy, a condominium unit owner-condominium association case.

CIRILLO, Judge, dissenting.

I respectfully dissent. I am unable to join the majority or concurring opinion because I do not believe Dulcina Smith should be forced to bear the losses caused by the malfunctioning of a sewer system over which she had no control. Our duty as a court of law is to do justice; justice in this case requires that a jury be permitted to determine whether the condominium association, which has exclusive control over all the common sewer lines of the condominium complex, should be held liable for the damage sustained in Smith's individual unit. I would reverse the trial court's entry of compulsory non-suit and remand the case for trial.

The majority, while sympathetic to Smith's plight, nevertheless concludes that Smith "failed to produce sufficient evidence on any theory of tort to avoid non-suit...." According to the majority, "[t]he major stumbling block for the trial court and the parties below seems to have been the articulation of precisely which theory of tort or negligence was being presented. Knowing the theory is vital, because that will determine what is required to establish a *prima facie* case." The majority then proceeds to analyze various theories of tort recovery in light of the facts of record before dismissing the theories as either improperly argued, insufficiently raised or not raised at all by Smith. Consequently, Smith is left without an avenue of redress.

The trial court determined that Smith's primary theory of liability, section 364 of the Restatement (Second) of Torts, "Creation or Maintenance of Dangerous Artificial Conditions," was "plainly inapplicable" because section 364 applies only to situations involving two separate owners of two separate parcels of real property. As a condominium owner, Smith was part owner of the common areas, sewers included; she was also a member of the condominium association she was suing.

Therefore, according to the trial court, Smith was not an adjacent landowner but one of several common owners, and as such, she could not claim an adjacent landowner's right to be free of physical harm emanating from an artificial condition created by the possessor of the neighboring land.

As my colleagues on the panel indicate, the trial court misapprehended the law. Liability under section 364 is premised primarily on possession and control, and not merely on ownership. Moreover, section 3311 of the Commonwealth's Uniform Condominium Act specifically provides that a unit owner is not precluded from bringing an action against the condominium association merely because he is a member or officer of that association. *See* 68 Pa.C.S. § 3311(a)(2); (a)(4). Therefore, the condominium association, as the "possessor" of the common sewer lines, is liable to others such as Smith for physical harm caused by the sewer lines which the association realizes or should realize involve an unreasonable risk of harm when reasonable care is not taken to make the condition safe after the association knows about it. § 364 Restatement (Second) of Torts.

In its opinion, the majority concludes that Smith is precluded from recovery under section 364 because "[t]here was no evidence presented at trial as to what appellee association could or should have done to prevent the injury ... [Smith] did not show that her injury was caused by a defectively designed or maintained plumbing system coupled with appellee condominium association's failure to take *available* remedial action." (emphasis in original). The majority also concludes that since the maintenance of sewage lines cannot be deemed to constitute an ultra-hazardous activity, Smith could not circumvent her omission by utilizing strict liability in tort imposed upon possessors of land with ultra-hazardous artificial conditions. Thus, while condominium unit owners generally can seek relief through section 364, according to the majority, Smith is ineligible to do so because she failed to advise the condominium association on how to fulfill part of the duties it was specifically created to perform.

I disagree with this analysis. Individuals purchase units in condominium complexes for myriad reasons, among them the desire to be relieved of personal responsibility for the care of structural and environmental elements of a dwelling, such as the roof, the electrical, plumbing and sewage systems, and the grounds. In a condominium, these tasks are delegated to the condominium association, which is generally empowered to "[r]egulate the use, maintenance, repair, replacement and modification of common elements." 68 Pa.C.S. § 3302(a)(6). The unit owners are assessed a monthly fee for the privilege of delegating their responsibilities to the condominium association. Thus it is inconceivable to me that, in order to be "made whole," a unit owner damaged by the malfunctioning of a common sewer line must first present evidence to establish precisely what the association should have been doing to ensure that the sewer line functioned properly. Such a requirement defies logic and negates a primary benefit of condominium ownership.

I would hold that Smith has met her burden in establishing a cause of action under section 364, under a theory of nuisance, or utilizing res ipsa loquitur. The Pennsylvania Supreme Court has defined nuisance as "that which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him." *Tuckachinsky v. Lehigh & Wilkes–Barre Coal Co.*, 199 Pa. 515, 518, 49 A. 308 (1901). Under the theory of absolute nuisance a defendant is held strictly liable for the offending activity, relieving the plaintiff of the burden of proving the defendant's negligence or intent to harm. Prosser and Keaton on Torts, 5th ed., § 78 at 552 (1984). The primary consideration in determining whether a condition constitutes an absolute nuisance is the relation of the objectionable activity to its surroundings. *Id.* The accumulation of sewage, when it flows onto the property of another, has long been held to be an absolute nuisance. *See In Re Haugh's Appeal*, 102 Pa. 42 (1883); *Knauss v. Brua*, 107 Pa. 85 (1884). *See also Schneider v. Sweeney*, 66 Pa.D. & C. 437 (1948) (listing cases finding

sewage seeping onto the property of another to be a private nuisance per se.)

In *Haugh, supra,* our supreme court was faced with the problem of one landowner's privy leaking into the well of the adjoining landowner. In holding for the injured plaintiff, the court stated:

> the right to have a privy is a right only so long as it is used without material injury to the property of others: *when its fetid contents begin to leak upon the adjoining lands it becomes a nuisance and is actionable as such* ... the proposition that one man should, under *any* circumstances, be permitted to deposit any part of his health-destroying filth in or upon his neighbor's premises, is simply absurd.

*Haugh,* 102 Pa. at 44–45. (emphasis added).

In *Knauss, supra,* the plaintiff and defendant owned adjoining lots and dwellings. The sewer connection to defendant's privy periodically became obstructed, causing "filthy water" to seep into the plaintiff's cellar. *Knauss,* 107 Pa. at 86. The defendant denied responsibility on the grounds that his house was leased to a tenant. At trial, in a special verdict, the jury had determined that there was a defect in the construction of the sewer that rendered it inefficient for the purpose for which it was intended. *Id.* at 90. Our supreme court still found the defendant liable because the privy had been malfunctioning before the tenant took possession. "But for a defect of this kind, which required not repair but reconstruction, even as between tenant and landlord, the former cannot be held; therefore, on all authority, the damages resulting from this default must fall on the latter." *Id.*

Unit owners in a condominium are adjacent property owners. The state legislature has granted them the right to sue other unit owners or the condominium association as individual property owners. Rather than each unit having its own sewer line, in a condominium several unit owners share one sewer line. The condominium association is the entity responsible for maintaining the common sewage system. It is also the entity charged with responsibility for determining whether and when common elements need repair, reconstruction, or

replacement. Moreover, the condominium association is vested with authority to levy assessments against the unit owners in order to pay for the requisite maintenance or improvement of the common elements. *See* 68 Pa.C.S. § 3302(a). Despite this new type of property ownership unknown in Pennsylvania a century ago, I would find our supreme court's resolution of the issues in *Haugh* and *Knauss* controlling here.

Although the majority now agrees Smith has a valid cause of action in absolute nuisance, it nonetheless states: "While we feel that it is proper for us to alter slightly appellant's § 364(c) negligence argument so that it comports to the law of condominium, we feel that it is not proper for us to permit appellant relief on appeal based upon a wholly different cause of action." To the majority, to provide such relief would be "tantamount to raising the issue *sua sponte,*" in violation of the supreme court's admonitions in *Wiegand, infra,* and *Estep, infra.* I find the majority's conclusion unsupported in the record and the cases cited inapposite.

In *Wiegand v. Wiegand,* 226 Pa.Super. 278, 310 A.2d 426 (1972), this court declared two sections of the Divorce Code unconstitutional because they were contrary to the equal rights amendment of the Pennsylvania constitution. On allocatur, our supreme court reversed, stating that "the constitutionality of these provisions was never questioned by the parties either in the trial court or in their briefs in the Superior Court." *Wiegand v. Wiegand,* 461 Pa. 482, 484, 337 A.2d 256, 257 (1975). The justices also noted that *sua sponte* determinations negate the inviolate rule that issues presented on appeal must have been properly preserved for appellate review. *Id.,* 461 Pa. at 485, 337 A.2d at 257. Similarly, in *Estep v. Estep,* 508 Pa. 623, 500 A.2d 418 (1985), another divorce action, the supreme court, quoting heavily from *Wiegand, supra,* reversed because this court "improperly interjected a legal theory not otherwise considered or preserved." *Id.* at 628, 500 A.2d at 420.

Here, unlike *Wiegand* and *Estep,* we would not be unfairly interjecting a legal theory not otherwise considered or preserved. *Estep, supra.* According to the majority: "The court

and the parties below searched the Restatement (Second) of Torts in vain for the appropriate theory of tort to apply to the facts of this case. Their assay of tort law was quixotic because the theory of tort they were seeking exists more or less in an inchoate form." Clearly, all parties were on notice that *any* applicable theory of tort would be considered; consequently, unfair surprise is not an issue. As the majority notes in footnote five, Smith stated at trial that her theory of the case was that the condominium association owed her an absolute duty not to put sewage on her property. Moreover, the record reveals that Smith preserved the issue for appellate review by raising it in her post-trial motion. Thus, under the peculiar circumstances of this case, granting Smith relief on the basis of absolute nuisance would *not* be tantamount to raising the issue *sua sponte;* it would merely be the "just, speedy and inexpensive determination" of her cause of action. *See* Pa.R.C.P. 126.

In the alternative, I would hold that Smith has established a valid cause of action in negligence utilizing the doctrine of res ipsa loquitur. The majority affirmed the trial court's denial of Smith's res ipsa loquitur claim, stating: "[e]ssentially the trial court noted that ... a plaintiff must eliminate other potential causes of harm suffered ... appellant failed to eliminate herself as a possible cause of the blockage and sewer back-up, nor did she eliminate other unit owners in her building as possible causes." I find that the trial court's analysis to be contrary to the case law of the Commonwealth.

Res ipsa loquitur, as delineated in section 328D of the Restatement (Second) of Torts, was adopted as the law of the Commonwealth in *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974). According to our supreme court, res ipsa loquitur "is neither a rule of procedure nor one of substantive tort law. It is only a shorthand expression for circumstantial proof of negligence—a rule of evidence." *Id.*, 457 Pa. at 611, 327 A.2d at 99. Section 328D explains res ipsa loquitur as follows:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Restatement (Second) of Torts, § 328D.

Under the Restatement rule, a plaintiff need not establish exclusive control; a defendant's negligence may be inferred when "other responsible causes are sufficiently eliminated by the evidence." *Gilbert,* 457 Pa. at 614, 327 A.2d at 101, *citing* Restatement (Second) of Torts, § 328D(1)(b) (1965). "Exclusive control may eliminate other causes, but the critical inquiry is not control but whether a particular defendant is the *responsible cause* of the injury." *Id.* (emphasis in original).

Here, a common sewer line overflowed into Smith's apartment, causing her great inconvenience and expense. Common sewer lines do not back-up and overflow into individual apartments with the documented frequency Smith experienced absent negligence, negligence either in failing to maintain the sewer lines properly or in failing to sue the developer for installing a defectively designed or constructed sewage removal system. The majority recognizes the condominium association was in exclusive possession and control of all the sewer lines in the condominium complex. Smith was on vacation at the time of the overflow in question. However, while it is true other unit owners were in residence, the sheer number and repetitive nature of the stoppages experienced in *all* the buildings of the condominium complex indicates that the back-ups were not simply the result of carelessness on the part of individual residents.

"On the criteria relating to other reasonable causes, a plaintiff is not required to exclude all other possible causes beyond a reasonable doubt, but *it is enough if he makes out a case from which a jury may reasonably conclude that negligence was, more probably than not, that of the defendant.*" *Schoenenberger v. Hayman*, 77 Pa.Cmwlth. 411, 417, 465 A.2d 1335, 1338 (1983) (citations omitted) (emphasis added). Whether the condominium association was the "responsible cause of the injury" is a question of fact for the jury. *Gilbert*, 457 Pa. at 614, 327 A.2d at 102. I would hold that Smith presented sufficient evidence to establish a cause of action in negligence using res ipsa loquitur, thereby warranting presentation of her case to the jury.

As the majority notes, an appellate court, in determining whether the trial court properly concluded that the plaintiff failed to establish a cause of action, must view the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable inferences of fact arising from the evidence and resolving any conflict in the evidence in favor of the plaintiff. *Coatesville Contractors v. Borough of Ridley*, 509 Pa. 553, 559, 506 A.2d 862, 865 (1986). A compulsory nonsuit will be affirmed on appeal *only where it is inconceivable, on any reasonable hypothesis*, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most favorable to the plaintiff, could determine the controlling issue in plaintiff's favor. *Stevens v. Cmwlth. Dept. of Transportation*, 89 Pa.Cmwlth. 309, 312–13, 492 A.2d 490, 492 (1985). Such is not the case here.

Viewing the evidence in the light most favorable to Smith and giving her the benefit of all reasonable inferences that may be drawn from that evidence, *Coatesville Contractors, supra*, I conclude that Smith has indeed established a cause of action, either in negligence under section 364 of the Restatement (Second) of Torts or utilizing res ipsa loquitur, or under a theory of nuisance. I would hold that the trial court committed an error of law in entering an order of compulsory

non-suit against Smith. Therefore, I would reverse the trial court order and remand the case for trial on the merits.